**MORTON–NORWICH PRODUCTS, INC., Plaintiff,**

v.

**David MATHEWS, Secretary of Health, Education & Welfare, and Alexander M. Schmidt, Commissioner of Food and Drugs, Defendants.**

**Civ. A. No. 76–0128.**

United States District Court, District of Columbia.

March 29, 1976.

---

Robert H. Becker, Alan H. Kaplan, Washington, D. C., for plaintiff.

Peter C. Schaumber, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

This is another Freedom of Information Act case. Following its now-settled practice, the Court requested the Government agency to submit samples of the documents for which exemption from disclosure is claimed in order to focus the issues in an adversary context. This was done, aided by some discrete excerpting, and the controversy was briefed and argued.

At stake are some 49 documents out of hundreds requested and disclosed following an elaborate file search and administrative clarification of what was sought. The documents still in controversy are claimed to be exempt under (b)(2) and (b)(5), 5 U.S.C. § 552. The claim of exemption is supported by an affidavit from a responsible, informed official. Appropriate indices were furnished, together with the sample documents. The parties cross-moved for summary judgment. There is no factual dispute. The Court must accordingly attempt to interpret what the Freedom of Information Act means when applied to the circumstances of this case.

Three requests of plaintiff are still opposed by the agency and form the basis of this litigation. The first contested request seeks

a copy of each memorandum or other record or document relevant to the controls and procedures utilized between January 1, 1965 and October 15, 1975 to eliminate possible laboratory contamination in the facilities operated by or on behalf of the Food and Drug Administration for the performance of sterility tests.

Two categories of documents within this request have been withheld: (1) worksheets showing quality assurance sterility sample results of analyses conducted in 1972 and 1974 on "audit" samples, and (2) inter-agency memoranda containing selective portions of the results of the samples, analyses of the results, and recommendations for changes in laboratory operation, analytical procedures and/or additional training.

Plaintiff's second request seeks to obtain a copy of each memorandum or other record or document prepared between January 1, 1965 and October 15, 1975, pertaining to the need or desirability of changes in the design, construction materials, structure, or equipment in facilities operated by or on behalf of the Food and Drug Administration for performing sterility tests.

Included in these documents are specific cost estimates supporting the budget needed to make proposed changes. A sample was again provided.

The final dispute concerns plaintiff's request for

a copy of each memorandum or other record prepared between January 1, 1965 and October 15, 1975, pertaining to the need or desirability of changes in the sampling and laboratory procedure in use by each laboratory of the Food and Drug Administration for testing (a) sterile impregnated gauze pack and/or (b) other sterile products.

Three classes of documents are within this request. First, there are 23 intra-agency memoranda reflecting the on-going pre-decisional deliberations of, summaries of meetings by, and correspondence between the members of, an internal FDA working group known as the Task Force on Sterility. No representative sample is provided, but the memoranda have been clearly indexed. Also withheld are memoranda containing discussions of possible modifications of analytical procedures and controls utilized in performing sterility testing. A sample document has been made available. Finally, the agency refused to reveal two inter-agency memoranda containing recommendations of personnel from the Center for Disease Control of the Public Health Service and the Food and Drug Administration concerning a draft set of Good Manufacturing Practice regulations (GMPs) for large volume parenteral products.

The defendants claim exemption under (b)(2) and (b)(5) for the first category and again invoke a (b)(5) exemption as to all the other requests in dispute as summarized above.

Certain benchmarks, well estab-lished by prior decisions, serve as initial guides in interpreting and applying the statute. A person requesting information is not required to show a need or a reason, and an agency must disclose wholly useless, meaningless and misleading information unless it is exempted. Where exemption is claimed, as here, the exemption must be narrowly construed, and the burden of proof is on the agency, *e. g., Washington Research Project, Inc. v. Department of Health, Education & Welfare,* 164 U.S.App. D.C. 169, 504 F.2d 238, 244 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). Against this back-ground, the Court turns to the specific re-quirements of the exemption.

The Court finds that (b)(2) does not support the agency's refusal to release doc-uments in the first category. The material relates neither to minor or "housekeeping" matters nor predominantly to internal per-sonnel rules and practices of the agency, but rather to the substantive performance and competence of the FDA in this area. Moreover, plaintiff has agreed to the dele-tion of the names of both the employees tested and the employees' supervisors, and therefore the aspects of the documents which might otherwise relate to personnel practices have been eliminated. According-ly, under the opinion of either Judge Wil-key or Judge Leventhal in *Vaughn v. Ro-sen,* D.C.Cir., 523 F.2d 1136 (1975), the (b)(2) exemption is not available.

It remains to consider the (b)(5) claims as to all of the materials in controversy.

The Court has before it here pri-marily documents that recommend or are, as in the case of the Task Force papers, clearly developed in aid of a recommenda-tion. Thus the papers are unquestionably an integral part of the agency's deliberative processes. All of the documents fall direct-ly under the (b)(5) exemption, and the agen-cy may refuse to produce any material that contains opinions, advice, evaluations, delib-erations, policy formulations, proposals, con-clusions or recommendations. The issue is whether factual statements found in these deliberative documents must be disclosed or also treated as exempt along with the rest of the text. If this proposition were presented as a matter of first impression, the Court would favor a rule of thumb to the effect that any document containing an explicit recommendation and legitimately prepared in the regular course of the agen-cy's business to further its deliberative process is exempt in its entirety. It ap-pears that Congress could rationally have so intended, recognizing the overriding need to encourage the free exchange of ideas with-in the Government during deliberations and policymaking.

The United States Court of Appeals for this Circuit has, however, taken a different approach. It has narrowed the exemption and required that even purely deliberative documents be excerpted under certain con-ditions to disclose facts stated within the four corners of the documents. *See, e. g., Schwartz v. Internal Revenue Service,* 167 U.S.App.D.C. 301, 511 F.2d 1303, 1305 (1975), and cases cited therein. The task presented here therefore is to specify what statements of fact must be disclosed as outside the exemption after censoring the deliberative document of its policymaking features. In the present state of the law the Court of Appeals has understandably given only the most general indication of its point of view. In view of the infinite varie-ty of documents that the Freedom of Infor-mation Act covers and the equally great variety of procedures followed by Govern-ment agencies in formulating policy, the case-by-case development of the meaning and effect of exemption (b)(5) has left many unanswered questions and much un-certainty. The Court of Appeals has sug-gested certain general tests:

Is the fact "easily severable"?

Is the fact "inextricably intertwined"?

Is the fact contained in a "summary" that has become part of the deliberative proc-ess?

Is the fact already in the "public do-main"?

Is the fact purely "investigative"?

It is necessary in this case to give these tests a clearer definition so that disclosure, where appropriate, may proceed. It appears to this Court that the rules stated immediately below must be followed in separating fact statements from their deliberative context in the case of the documents here in controversy.

■ A fact is "easily severable" if it is in a separate sentence and is deemed "inextricably intertwined" only if it is stated along with non-factual material in a single sentence. Since almost all statements of fact are summary in the sense of being incomplete and the inclusion or·emphasis of a particular fact is necessarily a matter of judgment, a statement of fact contained in a separate sentence or sentences may be withheld as exempt even if a part of the deliberative process only (1) when it appears from the face of the document that the writer is intentionally purporting to summarize facts, and (2) the facts have already been made public by the agency or may be elsewhere ascertained from other documents available from the agency by operation of the Act.

The Court is aware that this places a heavy burden on the responding agency but the difficulty is largely of the agency's own making. There is nothing in the Freedom of Information Act which requires an agency to claim an exemption. It is also obvious from the experience under the Act that much material for which exemptions are now being claimed has no current value or significance whatsoever. Demands are being made for disclosure of documents that go far back in time and which truly have lost any practical consequence. Indeed, it is difficult to understand why the Government has preserved many of these papers. If an agency takes a more liberal attitude about its relations to the public it can proceed by disclosing much of the exempted material without damage to the public interest or creating precedent which will injure its interests. A more enlightened policy would be one that asserted exemption only when genuinely important. This would greatly reduce the ever-growing bur-

den on the Federal Courts and would also reduce the expense of attorneys' fees assessed in these cases against the Government. Most importantly, such an approach would promote the purposes underlying the Act and bring about a far healthier understanding of governmental process. Thus the agency has it within its own hands to minimize greatly the need for excerpting and reviewing sentence-by-sentence papers that intermingle fact and policy.

■ One issue remains. Counsel for plaintiff urges that the Court examine each disputed document *in camera* and make the determinations as to what is fact and what is not. This approach was encouraged by *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), *subsequent appeal,* D.C.Cir., 523 F.2d 1136 (1975), a decision prior to the recent amendments to the Act which appear to recognize a discretion in the Court to take or not to take the *in camera* route. This Court has elsewhere expressed some of the considerations which have led it to reject *in camera* proceedings. *See Military Audit Project v. Bush,* 418 F.Supp. 880 (D.D.C.1976). In the present instance, these same reasons, plus other considerations, again prompt the Court in its discretion to reject *in camera* review of the designated documents.

The principal reason advanced by plaintiff in urging *in camera* consideration is that courts are to be trusted to be impartial and that a third-party review by a court is more comforting than review by representatives of the agency resisting disclosure. This is superficially enticing if one overlooks the experience of history that indicates how arbitrary judges as well as others in authority become if they conduct their business in secrecy. But apart from this danger, which plaintiff recognizes, it is necessary to point out two countervailing considerations. First, if the Government wished wrongfully to withhold, it need not have ever indicated that the documents existed in the first place. Second, sanctions now exist under the amended Act against those who improperly conceal, 5 U.S.C.

§ 552(a)(4)(F). The FDA processes thousands of Freedom of Information Act requests a year. It has a specialized staff which proceeds with legal advice. The U. S. Attorney in contested cases reviews that advice. There is nothing in this case to suggest that the agency has not been forthright or responsible. The Freedom of Information Act must proceed in an atmosphere of confidence in government. If the agency cannot be trusted, the Act will never work. It is a profound mistake to transfer administrative responsibility to judges on the theory that persons employed by the Executive branch are not honest or lack judgment. The effort to do this through the *in camera* process is misplaced.

Defendants' motion for summary judgment is granted in part and any deliberative or policy material contained in the documents may be withheld as exempt from compelled disclosure. Plaintiff's motion is granted in part to the extent that within ten days the agency must reveal the fact data in the documents as directed in this opinion.

SO ORDERED.