**Michael N. MERVIN, Appellant,**

v.

**FEDERAL TRADE COMMISSION.**

No. 77–1204.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1978.

Decided Nov. 2, 1978.

Rehearing Denied Dec. 4, 1978.

---

58. CORT Agreement, paragraph III F, J.A. at 211.

59. 62 F.C.C.2d at 94–95.

60. *See* 47 C.F.R. 73.282 n. 1 (1977).

Michael N. Mervin, pro se.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, McGOWAN and MacKINNON, Circuit Judges.

Opinion for the court PER CURIAM.

Opinion filed by Circuit Judge BAZELON, concurring in part and dissenting in part.

PER CURIAM:

Plaintiff-appellant Michael N. Mervin was employed by the Federal Trade Commission (FTC) as an attorney until he was discharged early in 1971. After pursuing a variety of other administrative and judicial proceedings, he brought this action in 1976 against the FTC. He presents three separate claims: (1) for disclosure of documents under the Freedom of Information Act (FOIA); (2) for amendment of the FTC's records relating to him, under the Privacy Act of 1974; and (3) for reinstatement and damages on the basis that his dismissal was wrongful. On cross-motions for summary judgment, the District Court granted summary judgment to the FTC on all three counts. We affirm.

## A

Under the FOIA, 5 U.S.C. § 552, Mervin seeks disclosure of four memoranda prepared by government attorneys while the FTC was defending against an earlier suit for reinstatement brought by Mervin. That suit was dismissed for failure to exhaust administrative remedies.

■ The FTC submitted an affidavit by one of its attorneys, W. Randolph Smith (Brief for Appellee, App. at 42–44), generally describing the four memoranda and claiming that they are exempt from disclosure under exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). Exemption 5 provides that government agencies need not disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The Supreme Court has said that the civil discovery rules "can only be applied under Exemption 5 by way of rough analogies." *EPA v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973). Nevertheless, it is clear that exemption 5 subsumes the attorney work product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). As characterized in Fed.R.Civ.P. 26(b)(3), the attorney work product privilege protects "against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

■ Mervin's position appears to be that, although parts of the memoranda may be attorney work product exempt from disclosure, he is entitled to disclosure of those portions of the memoranda which contain statements of fact concerning his dismissal. Subsection (b) of the FOIA provides in part that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this sub-

section." 5 U.S.C. § 552(b). For example, a government attorney may not protect a verbatim witness statement from disclosure (either under the FOIA or in civil discovery) merely by including its text in a memorandum prepared for use in litigation. *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724, 735–37 (5th Cir. 1977), *rev'd on other grounds*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *see Bristol-Myers Co. v. FTC*, 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939, *cert. denied*, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970) (governmental deliberative privilege).[1]

■ We agree with the District Court and with the government that it would not be appropriate to sever factual material out of the memoranda at issue here. We recently said, in *Mead Data Central, Inc. v. United States Dep't of Air Force*, 184 U.S. App.D.C. 350, 566 F.2d 242, 256 (1977), that:

Exemption five is intended to protect the deliberative process of government and not just deliberative material. . . . In some circumstances . . . the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5).

For example, in *Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 274–78, 491 F.2d 63, 67–71 (1974), we held certain summaries of evidence in an administrative hearing to be non-severable. The summaries had been prepared by the government officers who had heard the evidence, to assist the agency head who was charged with making a decision based on that evidence. To disclose the factual portions of these documents, we noted, would disclose which facts the administrator's aides considered important enough to bring to his attention, thereby exposing part of the deliberative process in a way contrary to the intent of exemption 5 that government officials be able to communicate among them-

1. Even witness statements may sometimes be privileged as attorney work product, for example, statements taken by the attorney for an employer from its employees in the course of their duties, under a promise of confidentiality.

*See Brockway v. Department of the Air Force*, 518 F.2d 1184, 1189–94 (8th Cir. 1975) (FOIA exemption 5); *Machin v. Zuckert*, 114 U.S.App. D.C. 335, 316 F.2d 336, *cert. denied*, 375 U.S. 896 (1963) (civil discovery).

selves in candor concerning decisions not yet made. *Accord, Brockway, supra.*

*Montrose Chemical* and *Mead Data, supra,* illustrate that in cases concerning the governmental deliberative process the distinction between "factual" and "deliberative" material does not answer all exemption 5 questions. This case concerns the attorney work-product privilege. We believe that a strict demarcation between factual and deliberative material (requiring disclosure of the former) is even less helpful here than it is in cases involving the governmental deliberative process.

■ An important part of what is protected by the privilege for attorney work-product is the attorney's consideration and weighing of the facts. *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Kent Corp. v. NLRB,* 530 F.2d 612, 624 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976) (FOIA exemption 5). Because of this, even the factual material segregated from attorney work-product is likely to reveal some of the attorney's tactical and strategic thoughts. While the government cannot exempt pure statements of fact from disclosure by calling them attorney work-product, we agree with the Fourth and Fifth Circuits that material which might disclose an attorney's appraisal of factual evidence is attorney work-product exempted from disclosure by exemption 5. *Kent Corp. v. NLRB, supra; Deering Milliken, Inc. v. Irving,* 548 F.2d

1131, 1137–38 (4th Cir. 1977). *Cf. Robbins Tire, supra,* in which the Fifth Circuit distinguished *Kent Corp.* and held that certain witness statements were not within exemption 5.

■ The dissent suggests that the case should be remanded to the District Court for either further government affidavits or an *in camera* inspection of the documents. We disagree. Courts should ordinarily consider the possibility of examining the documents *in camera* to determine whether the material claimed to be exempt as attorney work-product contains segregable factual portions. In some cases it may be the only way to insure that exemption 5 is properly applied. *In camera* inspection, however, will not be necessary in all cases.[2] *See generally Mead Data, supra,* 184 U.S.App. D.C. at 358 & n.10, 368, 369–70, 566 F.2d at 250 & n.10, 260, 261–62.

Our examination of the record in this case indicates that *in camera* inspection is not required. Mr. Smith's sworn affidavit (Brief for Appellee, App. at 42–44) satisfies us that, to the extent the documents at issue contain factual material, it is incidental to and bound up with, discussion of litigation strategy and the deliberative processes of attorneys actively preparing their defense for a pending lawsuit.[3] Since the affidavit establishes that the "factual" material is actually privileged attorney work-product, further inquiry is not necessary.[4]

2. The Supreme Court in *Sears, Roebuck, supra,* this court in *Montrose Chemical, supra,* and the Fifth Circuit in *Kent Corp., supra,* and *Robbins Tire, supra,* held that *in camera* inspection was not necessary in resolving issues of the type raised here.

3. The Smith affidavit describes the four documents and then states: "The documents . . . contain selected background information, legal analysis, and recommended courses of action regarding plaintiff's claims against the Commission." (Brief for Appellee, App. at 44.)

4. The dissent asserts that the district court denied appellant's request for disclosure of even those "segregable" portions of the memoranda containing only statements of fact concerning his dismissal. Dissenting opinion at 832. This characterization is inaccurate. The re-

quest for disclosure was denied because the factual material was not segregable—it was part of the work-product.

The dissent's interpretation is based on the District Court's statement that "once a document is classified as work product, even factual matters in the document are exempt from disclosure under the Act. *Kent Corporation v. NLRB,* 530 F.2d 612 ([5th Cir.] 1976)." Obviously, the statement must be read in the context of the *Kent* case, and in *Kent* the segregability issue was specifically addressed.

[T]he question is whether any reasonably segregable portion of the documents remains after the parts protected by work-product policies are determined. In our view, even the factual matters in these reports . . . are protected by the work-product privilege. . . . Writing in contemplation of forth-

In coming to this conclusion, we stress that this case concerns the attorney work-product privilege, not the privilege for governmental deliberation. The likelihood that factual material will be segregable is smaller in cases dealing with attorney work-product than in cases dealing with the governmental deliberative process. In the process of administrative decision making, it is likely that factual documents will be developed, for example, by lay personnel without decisionmaking or advisory authority, which can be segregated from deliberative material without difficulty, and with minimal danger that the deliberative process will thereby be excessively exposed. On the other hand, an attorney's written product in preparing for litigation, even if factually oriented, seldom can be separated from his tactical and strategic thinking. As a result, the government's assertion that an attorney's work-product is not segregable permits a court to apply a broader privilege than in those cases where the work-product privilege is not involved.

▌ Mervin urges that factual material within the attorney work-product is exempt from disclosure only if the facts are available to the requestor from some other source. Apparently the only case to so hold is *Morton-Norwich Products, Inc. v. Mathews*, 415 F.Supp. 78, 82 (D.D.C.1976). It is not necessary for us to consider whether this rule should apply in FOIA cases generally. It suffices for the present case to hold, that in view of the strong public policies furthered by the privilege for attorney work-product, factual material may be protected as part of attorney work-product even though it is not reasonably available to the requestor from another source. We note that the Supreme Court in *Mink* described the segregable portions rule as requiring disclosure

coming . . . litigation, an attorney must be able not only to discuss doctrinal theories but also to "assemble information, [and] sift what he considers to be the relevant from the irrelevant facts" without feeling that he is working for his adversary at the same time. *Hickman v. Taylor*, 329 U.S. at 511, 67 S.Ct. 385. . . . The feeling would be well justified if we allowed the FOIA to be used to force disclosure of such materials.

of "purely factual material appearing in those documents in a form that is severable *without compromising the private remainder of the documents.*" 410 U.S. at 91, 93 S.Ct. at 838 (emphasis added). *See also* 5 U.S.C. § 552(b) ("*reasonably* segregable portion") (emphasis added); *Schwartz v. IRS*, 167 U.S.App.D.C. 301, 303, 511 F.2d 1303, 1305 (1975), and the cases cited in note 8 therein.

We therefore conclude that the District Court was correct in holding, on the basis of the Smith affidavit submitted by the FTC, that the material Mervin seeks is exempt from disclosure under FOIA exemption 5.

### B

▌ Secondly, Mervin seeks under the Privacy Act, 5 U.S.C. § 552a(d)(2), to have the FTC amend its records concerning his dismissal to remove references that he was dismissed for inefficiency. The FTC has refused on the ground it believed the references to be accurate.

When a plaintiff seeks disclosure of records under the Privacy Act, subsection (g)(3) of that act states that the agency shall bear the burden of proving that they should not be disclosed. Subsection (g)(2)(A), concerning requests such as this one to *amend* allegedly inaccurate records, contains no provision allocating the burden of proof. Legislative history and reported decisions also shed no light on this question. In these circumstances, we agree with the District Court that the ordinary rule imposing the burden of proof on the plaintiff should apply. After reviewing the record, we also agree with the District Court that Mervin could not meet that burden. The judgment against Mervin on his second cause of action is also affirmed.

530 F.2d at 624. The District Court, then, was not unaware of the application of the segregability requirement to Exemption 5, as the dissent implies. Rather, the District Court was persuaded (as we are) that, like *Kent*, the factual matters are not segregable from the privileged work-product.

## C

Mervin's final cause of action alleges that his discharge from FTC employment violated both the due process clause of the Fifth Amendment and FTC personnel regulations. We affirm this portion of the judgment as well.

1. *Due Process.* Mervin did not have a civil service appointment, and served at the pleasure of his superiors. Therefore, he had no property right to continued employment cognizable under the due process clause. *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).[5]

He would, however, have a cause of action for infringement of his liberty, if the circumstances of his dismissal were such as would effectively foreclose his opportunities to obtain future employment in his profession. *Board of Regents v. Roth,* 408 U.S. 564, 573–74, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The standard is a fairly high one; the courts do not sit as general public employee grievance review boards. Dismissal from employment, without more, might well make the search for a new job difficult. But this in itself is not a due process violation. *Mazaleski v. Treusdell,* 183 U.S. App.D.C. 182, 190–96, 562 F.2d 701, 709–15 (1977). It appears from the record that FTC officials communicated to Mervin's prospective employers their belief that he did not adequately and efficiently perform his duties at the FTC. Comparing this case to *Mazaleski* and the many cases cited therein (*id.* at 195, 562 F.2d at 714), we conclude that the District Court was correct in holding that Mervin's liberty interest was not infringed by the FTC.[6]

2. *FTC Regulations.* Mervin contends that his discharge violated provisions of the FTC administrative manual establishing a performance rating plan for employees. The relevant portions of the manual, as they read at the time Mervin was discharged, provided that an employee who was to be given an "unsatisfactory" rating must be given a written notice of the specific deficiencies in his performance and at least 90 days in which to improve. § 5–430.14. An "unsatisfactory" rating constituted a basis, but not the only permissible basis, for removing an employee from his position (although not necessarily from the FTC's employ entirely, if another job to which he was better suited could be found). § 5–430.21. Finally, when a reduction in force was to be made due to lack of funds, all affected employees with "unsatisfactory" ratings must be terminated before any others. § 5–430.22. (Brief for Appellee, App. at 62–70).

The record does not indicate that Mervin ever received an "unsatisfactory" rating under this chapter of the administrative manual. The notice of termination which was sent to him on December 31, 1970, stated that he was being discharged because of a lack of funds (R. 9 at 85). In a letter of February 16, 1973 to the Civil Service Commission (CSC), which was investigating Mervin's case, the Executive Director of the FTC stated that Mervin was not discharged as part of a reduction in force due to lack of funds. The letter states that he was actually terminated "because the management officials of this agency were committed to

---

**5.** Mervin does not argue that the FTC administrative manual, discussed *infra,* conferred upon him a "property" interest in continued employment protected under the due process clause. *See Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 190–91 n.23, 562 F.2d 701, 709–10 n.23 (1977). We refrain from deciding this issue, in view of our conclusion that this portion of Mervin's case is barred for other reasons.

**6.** The District Court concluded that *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), barred this cause of action. We question this reading of *Paul,* which held that

reputation without more is not a liberty or property interest protected by the due process clause, but specifically distinguished the situation where termination of employment was also at stake. *Id.* at 701, 96 S.Ct. 1155. The *Paul* court discussed *Roth, supra,* stating that by contrast an employer who defamed an employee still on the payroll would not be subject to a due process action. *Id.* at 710, 96 S.Ct. 1155. It therefore appears that *Paul* and *Roth* can be read consistently with one another. But in any event we hold that Mervin has not proven his case under *Roth* and its progeny.

making it operate more efficiently." The statement about lack of funds, the letter said, was inaccurate and had been given to Mervin to spare his feelings (Brief of Appellee, App. at 31).

Mervin's grievance on this theory has two aspects. First, he contends that the reason for his discharge which was communicated to the CSC and to his prospective employers—that he could not adequately and efficiently perform his duties—is tantamount to an "unsatisfactory" rating in substance, if not in form. Therefore, he argues, the FTC must be held to the procedures in its administrative manual for the imposition of "unsatisfactory" ratings, procedures which include notice and an opportunity to improve. It is undisputed that the FTC did not follow those procedures in Mervin's case.

An agency cannot be permitted to exalt form over substance and deny an employee the procedural safeguards required for an "unsatisfactory" rating, merely by discharging him for a reason that is, in everything but name, an "unsatisfactory" rating. The agency's obligation to follow its own procedural rules exists to protect the rights of those such as Mervin who deal with the agency. Therefore it is an obligation to follow their spirit as well as their letter. *See Thomas v. Ward*, 96 U.S.App.D.C. 302, 306, 225 F.2d 953, 957 (1955) (Bazelon, J., concurring), *cert. denied*, 350 U.S. 958, 76 S.Ct. 348, 100 L.Ed. 833 (1956); K. Davis, *Administrative Law of the Seventies*, § 5.03–5 (Supp.1977).

It appears, however, that Mervin has never attempted to pursue administrative remedies with respect to this claim. He apparently learned of the letter referring to inefficiency while attempting to pursue an administrative appeal before the Civil Service Commission. He included it in his District Court complaint against the Civil Service

Commission, and in the complaint in this case against the FTC. But nothing in the record indicates that he ever presented this theory to the FTC. Therefore, judicial review at this point is not appropriate, and the District Court correctly dismissed the complaint insofar as it relied on this theory. This disposition is, of course, without prejudice to an attempt to pursue administrative remedies at this time, and seek judicial review thereafter, subject to whatever barriers may be presented by the statute of limitations at this late date.[7]

Whatever the FTC's actual reasons for discharging Mervin, he may have been entitled to be treated as though his discharge were part of a reduction in force, because that was the reason given to him at the time. If so, Mervin should have been discharged only if at the time of the discharge no competing employees with "unsatisfactory" ratings were retained in the area of FTC work where increased efficiency was needed. FTC Admin. Manual, § 5–430.22, *supra*. The record does not reveal whether there were any such employees. If we so treated the case, this would be a material issue of fact requiring reversal of the summary judgment.

At oral argument, Mervin also referred to 5 C.F.R. § 351.601, a regulation of the CSC which he alleged also required that employees with "unsatisfactory" ratings be discharged first.

We hold that it is too late in the day for Mervin to obtain relief on any of these theories, assuming we would find them meritorious. Shortly after his discharge, he filed a civil action in the District Court seeking reinstatement. *Mervin v. FTC*, Civ. No. 679–71 (D.D.C., filed April 6, 1971). On January 19, 1973, the action was dismissed without prejudice for failure to exhaust administrative remedies. We af-

---

7. The basic statute of limitations for claims against the federal government, 28 U.S.C. § 2401(a), bars actions not filed "within six years after the right of action first accrues." If this claim "accrued" at the time of Mervin's discharge early in 1971, it would appear to be barred. On the other hand, Mervin apparently learned early in 1973 that inefficiency had been a reason for his firing; if the six-year period is measured from that date a prompt suit would not be time-barred. At this stage of the proceedings, it is unnecessary for us to decide this question.

firmed that dismissal, 160 U.S.App.D.C. 148, 489 F.2d 1272 (1974), and certiorari was denied, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974). Meanwhile, Mervin attempted to pursue administrative remedies. He petitioned the CSC for relief. The CSC dismissed the appeal as untimely (Brief of Appellee, App. at 28–29). Mervin thereupon sued the CSC asking a mandatory injunction directing it to consider the merits of his appeal. *Mervin v. United States Civil Service Comm'n,* Civ. No. 74–1297 (D.D.C., filed Aug. 29, 1974). On June 16, 1975, Judge Sirica dismissed the case for failure to state a claim.

In the attempted administrative appeal and these two prior civil suits, Mervin proceeded on the theory that he had been discharged from the Federal Trade Commission as part of a reduction in force. He cited the CSC regulation in these prior proceedings, but not the provisions of the FTC administrative manual (R. 9 at 101). Therefore it is clear that in his first two lawsuits, he was pursuing the same cause of action, involving the same dismissal, as he is in the present suit: seeking reinstatement because of allegedly improper dismissal procedures. Principles of *res judicata* prevent relitigation not only on the grounds or theories actually advanced, but also on those which could have been advanced in the prior litigation. Restatement of Judgments §§ 62, 63 (1942); Restatement (Second) of Judgments §§ 61, 61.1 (Tent.Draft No. 1, 1973); 1B Moore's Federal Practice

¶ 0.405[1] at 621–22 (2d ed. 1974).[8] In the statement of related cases (required by our local rule 8(b)) in his brief in the present case, Mervin stated that "The pending case was previously before this Court under the same title, No. 73–1330." We agree with his characterization.

The fact that the present defendant is the FTC, while the defendant in one of the prior cases was the CSC, does not prevent application of the principle of *res judicata* to the judgment in that case. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 402–03, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940). *Accord, River Valley, Inc. v. Dubuque County,* 507 F.2d 582 (8th Cir. 1974); *United States v. Willard Tablet Co.,* 141 F.2d 141 (7th Cir. 1944); *Second Nat'l Bank of Saginaw v. Woodworth,* 54 F.2d 672, 674 (E.D.Mich.1931). *See* Comment, Res Judicata and Intra-Governmental Inconsistencies, 49 Columbia L.Rev. 640, 653–54 (1949). The CSC was involved in the prior case only because statutes and regulations establish it as the forum for administrative appeals by terminated government employees. Mervin was pursuing the same "reduction in force" issue he advances here.

We are aware that the prior court decisions did not address the merits of Mervin's

---

**8.** The rule is stated thus in the proposed *Second Restatement of Judgments:*

§ 61. Dimensions of "Claim" for purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a

convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 61 (Tent. Draft No. 1, 1973).

§ 61.1. Exemplifications of General Rule Concerning Splitting

The rule of § 61 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action

(a) To present evidence or grounds or theories of the case not presented in the first action, or

(b) To seek remedies or forms of relief not demanded in the first action.

*Id.* § 61.1.

contentions. However, the records of the prior cases reveal that Mervin, an attorney, consciously chose to begin by seeking judicial rather than administrative remedies, and did not first seek administrative relief until several months after he was put on notice that that was the proper course of action (Brief for Appellee, App. at 28–29). His suit against the Civil Service Commission was dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, since he sought relief which was beyond the power of the CSC to give. This is an adjudication on the merits having full *res judicata* effect. *Taylor v. New York City Transit Auth.*, 433 F.2d 665, 668 (2d Cir. 1970) (public employee discharge; judicial review of administrative proceedings); *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519, 523 (3d Cir. 1973). *See Blackhawk Heating & Plumbing Co. v. Driver*, 140 U.S.App.D.C. 31, 38, 433 F.2d 1137, 1144 (1970); Restatement (Second) of Judgments 48, Comment a (Tent.Draft No. 1, 1973); 2A Moore's Federal Practice ¶ 12.09[3] at 2313 (2d ed. 1975).[9] It therefore is unnecessary for us to consider whether Mervin should have been granted relief had he promptly and properly sought these remedies through the administrative process.

The judgment of the District Court dismissing this action in its entirety is affirmed.

*Judgment accordingly.*

BAZELON, Circuit Judge, concurring in part and dissenting in part.

I concur in Parts B and C of the court's opinion, relating to appellant Mervin's Privacy Act and wrongful dismissal claims. I cannot, however, subscribe to the court's disposition of appellant's request for disclosure of documents under the Freedom of Information Act (FOIA).

The decisions of this circuit have clearly established that nonexempt portions of an otherwise exempt document must be disclosed unless they are "inextricably intertwined with exempt portions." *Mead Data Central, Inc. v. United States Dep't of Air Force*, 184 U.S.App.D.C. 350, 368, 566 F.2d 242, 260 (1977); *accord, Washington Research Project, Inc. v. Dept. of HEW*, 164 U.S.App.D.C. 169, 180, 504 F.2d 238, 249 (1974); *Bristol-Myers v. FTC*, 138 U.S.App. D.C. 22, 26, 424 F.2d 935, 939 *cert. denied*, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). In 1974, Congress expressly incorporated this requirement into FOIA by providing that "any reasonably segregable portions of a record shall be provided . . . after deletion of the portions which are exempt under this subsection." Pub.L. No. 93–502, § 2, 88 Stat. 1561, 5 U.S.C. § 552(b) (1976). Moreover, we have repeatedly emphasized that FOIA places the burden of justifying nondisclosure of reasonably segregable material on the agency seeking to withhold information and that this burden cannot be satisfied by sweeping claims of exemptions and conclusory allegations. *See, e. g., Mead Data Central, Inc. v. United States Dep't of Air Force*, 184 U.S.App.D.C. 350, 368–70, 566 F.2d 242, 260–62 (1977); *Vaughn v. Rosen*, 173 U.S.App.D.C. 187, 195–96, 523 F.2d 1136, 1144–45 (1975). Thus, FOIA requires that every effort be made to separate and disclose those portions of attorney work product documents that do not reveal the thought processes and strategies of the attorney. *See, e. g., Deering Milliken, Inc. v. Irving*, 548 F.2d 1131 (4th Cir. 1977).

The majority opinion, however, suggests that where attorney work product is involved, courts are permitted "to apply a

---

**9.** Increasingly . . . by statute, rule, or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar. . . .

The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding. . . .

Restatement (Second) of Judgments § 48, Comment a (Tent.Draft No. 1, 1973).

broader privilege than in those cases where the work-product privilege is not involved." Majority opinion at —— of 192 U.S.App. D.C., at 827 of 591 F.2d. By reducing the government's burden of demonstrating non-segregability and creating a lower standard of judicial review for claims of exemption under the attorney work product privilege of Exemption 5, the majority's position violates the clear language of FOIA. In the 1974 amendments, Congress specifically mandated that for *all* claims of exemption—even those based on national security, an area in which the special expertise of the government agencies has been recognized—the courts shall "determine the matter *de novo*" and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

In the present case, the FTC's supporting affidavit does not even allege that any attempt has been made to segregate and disclose statements of fact from material that would otherwise reveal the thought processes of the attorneys. The Commission asserts only that the documents contain "selected background information, legal analyses, and recommended courses of action regarding plaintiff's claims against the Commission," thus constituting attorney work product. Nonetheless, the district court denied appellant's request for disclosure "of at least segregable, factual portions" of certain documents concerning his dismissal. Complaint for Injunctive Relief, Brief for Appellee, App. at 49. Since the District Court never examined those documents, it apparently based its decision on its view that "once a document is classified as work product, even factual matters in the document are exempt from disclosure under the Act." District Court Opinion at 4. Although an attorney's summary of the facts of a case will often be revealing enough to merit an exemption, the district court's interpretation of the scope of Exemption 5 flies in the face of the explicit language of FOIA and previous decisions of this court directing that non-exempt factual information be segregated and disclosed.[1]

In some cases an affidavit sufficiently detailed to allow *de novo* review could reveal the very information that the agency claims to be exempt. But this circumstance does not relieve the government of its burden of justifying nondisclosure or the court of its responsibility to conduct full *de novo* review of the agency decision. Recognizing that the government would not always be able to demonstrate that withheld documents were clearly exempt from disclosure by means of detailed affidavits and testimony, Congress expressly provided that the district court "may examine the contents of such agency records *in camera* to determine whether such records *or any part thereof* shall be withheld." 5 U.S.C. 552(a)(4)(B) (emphasis added). *In camera* inspection is particularly appropriate where, as here, the documents are limited in number and length, they are not particularly sensitive, and evaluation of the government's claim does not require any special knowledge or expertise.[2]

1. The majority opinion explains that the District Court's assertion that even factual matters in attorney work product are exempt from disclosure must be read in the context of *Kent Corporation v. NLRB*, 530 F.2d 612 (5th Cir. 1976). Maj. opinion at —— n.4 of 192 U.S. App.D.C., at 826 n.4 of 591 F.2d. The majority then concludes that, like *Kent*, the District Court was persuaded that the factual matters were not segregable from the privileged work product. The *Kent* court, however, had conducted *in camera* inspection before determining that the factual matters in the specific work product reports at issue there were not segregable. In the present case, the District Court did not conduct *in camera* inspection. Further, although supporting affidavits may describe the documents in sufficient detail to allow *de*

novo review without resort to *in camera* inspection, the Smith affidavit did not even allege that the factual material was not segregable.

2. The circumstances of the present case contrast markedly with those of another recent Exemption 5 case before this court, *Bristol-Myers Co. v. FTC*, (No. ! 77 -1275 , Aug. 22, 1978), in which we held that *in camera* inspection was unnecessary for resolution of the plaintiff's claim. In that case, the district court was plainly aware of the requirement that segregable portions of an otherwise exempt doctrine be disclosed, and the Commission supplied detailed descriptions of the documents and justifications, including hypothetical illustrations, for its claim that segregation was impracticable. *Id.,* slip opinion at 21,

Because the district court in the present case failed to consider whether factual material in these documents could be segregated without revealing the attorneys' thought processes, I would remand for either further government affidavits or *in camera* inspection of the documents.

n.23. In the present case, the district court was apparently unaware of the application of the segregability requirement to Exemption 5, and the government affidavit neither alleged nor established that factual material could not be segregated and disclosed without revealing the thought processes of the attorneys.