671 F.2d 553
 217 U.S.App.D.C. 47, 1982-1 Trade Cases 64,518
 GROLIER INCORPORATED, a Corporation, Appellant,
v.
FEDERAL TRADE COMMISSION, Michael Pertschuk, Chairman, and
Paul Rand Dixon, David M. Clanton, and Robert
Pitofsky, Commissioners.
 No. 80-1939.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 29, 1981.
Decided Feb. 5, 1982.
 
 Daniel S. Mason, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Frederick P. Furth, Thomas R. Fahrner, Michael P. Lehmann, Bruce J. Wecker, Steven J. Mehlman, San Francisco, Cal., Samuel H. Seymour, Allan Hoffman, and Rene A. Torrado, Washington, D. C., were on the brief, for appellant. Robert A. Seefried, Washington, D. C., entered an appearance for appellant.
 Robert E. L. Eaton, Jr., Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., and Charles Nelson, Atty., F. T. C., Washington, D. C., were on the brief, for appellees.
 Before WRIGHT, MacKINNON and WALD, Circuit Judges.
 Opinion for the court PER CURIAM.
 
 
 1
 Opinion dissenting in part and concurring in part filed by Circuit Judge MacKINNON.
 
 PER CURIAM:
 
 2
 Appellant Grolier filed suit under the Freedom of Information Act (FOIA)[1] seeking documents relating to a covert investigation of one of its subsidiaries, the Americana Corporation. Federal Trade Commission (FTC) lawyers prepared these documents as part of a civil penalty action filed against Americana in 1972 by the Department of Justice. United States v. Americana Corp., Civil No. 388-72 (D. N.J.). The Americana action involved alleged misrepresentation in door-to-door sales and false advertising. The action was dismissed with prejudice on November 17, 1976, after the FTC disobeyed a court order to turn over certain materials to the defendants.
 
 
 3
 In this FOIA case the District Court held that certain requested documents-Numbers 1, 3, 5, 6, and 7-constituted attorney work-product and that the FTC properly withheld them pursuant to Exemption 5[2] of the Freedom of Information Act.[3] Grolier, Inc. v. FTC, D. D.C. Civil Action No. 79-1215, Memorandum filed February 21, 1980 at 3, Joint Appendix (JA) 113; Grolier, Inc. v. FTC, D. D.C. Civil Action No. 79-1215, Memorandum filed June 13, 1980 at 2, JA 118.
 
 
 4
 There is no question that the documents involved were work-product prepared as part of the Americana action. Rather, the question on appeal is whether these documents continue to be privileged against disclosure several years after the Americana suit was terminated.
 
 
 5
 I. TEMPORAL SCOPE OF THE WORK-PRODUCT PRIVILEGE
 
 
 6
 Exemption 5 of FOIA "exempt(s) those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). In the civil discovery context, however, there exists a "dispute among the courts as to * * * whether the protection afforded by the (work-product) privilege lapses once the litigation has ended or the prospects of litigation have faded (.)" Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C.Cir.1980). Indeed, courts have followed three different approaches in deciding whether the work-product privilege extends beyond the termination of litigation.[4]
 
 
 7
 At one extreme, some courts have concluded that the work-product privilege applies only if the materials were prepared in anticipation of the very suit before the court; documents prepared for one case are thus freely discoverable in a different case. E.g., United States v. Internat'l Business Machines Corp., 66 F.R.D. 154, 178 (S.D.N.Y.1974) (document must be prepared in anticipation of litigation in the case in which the special immunity accorded to such material is sought); Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117, 119 (M.D.Pa.1970) (same); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 207 F.Supp. 407, 410 (M.D.Pa.1962) (materials must be prepared for the case at bar); Gulf Construction Co. v. St. Joe Paper Co., 24 F.R.D. 411, 415 (S.D.Tex.1959) (same); Tobacco & Allied Stocks, Inc. v. Transamerica Corp., 16 F.R.D. 534, 537 (D.Del.1954) (same). At least one of these courts has noted that the seminal case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), involved materials prepared in anticipation of the litigation then before the court. Gulf Construction Co. v. St. Joe Paper Co., supra, 24 F.R.D. at 415.
 
 
 8
 At the other extreme, some courts have held that there is "a perpetual protection for work product" extending beyond the termination of the litigation for which the documents were prepared and reaching all subsequent suits. In re Murphy, 560 F.2d 326, 334 (8th Cir. 1977) (emphasis added). Accord, Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480, 483-484 (5th Cir. 1973) (rationale for work-product rule scarcely less applicable to a closed case than to one still being contested); United States v. O.K. Tire Co., 71 F.R.D. 465, 468 n.7 (D.Idaho 1976); Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 43 (D.Md.1974).
 
 
 9
 A third, intermediate approach is that the extension of the work-product privilege from one case to a subsequent one turns on "whether the first action was complete and upon the relationship between the first and second actions." 4 J. Moore, Federal Practice P 26.64(2) at 26-415 (2d ed. 1979). In the same vein, another leading commentator has found the "sounder view" to be that "documents prepared for one case have the same protection in a second case, at least if the two cases are closely related." 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 at 201 (1970) (emphasis added). See Cooper, Work Product of the Rulesmakers, 53 Minn.L.Rev. 1269, 1299 n.100 (1969) (view that privilege terminates is tenable "only when there is no danger of disclosure to others pursuing claims related to the claims involved in the litigation giving rise to the one-time work product materials").
 
 
 10
 A substantial body of case law supports the conclusion that the work-product privilege extends to subsequent cases only when they are related. See, e.g., Republic Gear Co. v. Borg-Warner Co., 381 F.2d 551, 557 (2d Cir. 1967); Hercules Inc. v. Exxon Corp., 434 F.Supp. 136, 153 (D.Del.1977); Midland Investment Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 138 (S.D.N.Y.1973). The paradigmatic situation is posed by Philadelphia Electric Co. v. Anaconda American Brass Co., 275 F.Supp. 146 (E.D.Pa.1967), where documents prepared in defense of a criminal antitrust action were found to be within the work-product rule in a subsequent civil antitrust suit.[5]
 
 
 11
 Extending the work-product protection only to subsequent related cases best comports with the fact that the privilege is qualified, not absolute.[6] Hickman v. Taylor, supra, 329 U.S. at 511, 67 S.Ct. at 393. " '(B)ecause the privilege obstructs the search for truth and because its benefits are, at best, "indirect and speculative," it must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." ' " In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 802-803 (3d Cir. 1979) (quoting In re Grand Jury Proceedings (Sun Co.), 599 F.2d 1224, 1235 (3d Cir. 1979)).
 
 
 12
 The purpose of the privilege, as this court has made clear, "is to encourage effective legal representation within the framework of the adversary system by removing counsel's fears that his thoughts and information will be invaded by his adversary. In other words, the privilege focuses on the integrity of the adversary trial process itself * * *." Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 775 (D.C.Cir.1978) (en banc ) (emphasis in original; footnote omitted). Therefore, in order to fall within the scope of the privilege a document "must 'relate to the conduct of either ongoing or prospective trials; (it must) include factual information, mental impressions, conclusions, opinions, legal theories or legal strategies relevant to any on-going or prospective trial.' " Exxon Corp. v. FTC, 663 F.2d 120, 129 (D.C.Cir.1980) (emphasis added; brackets in original) (quoting Jordan v. U.S. Dep't of Justice, supra, 591 F.2d at 775-776).
 
 
 13
 When litigation has ended and no potential for related actions exists, concerns about possible inroads on the integrity of the adversary system greatly diminish. Indeed, "where the work-product materials in question were prepared for a distinct and prior * * * litigation, long completed, the policies underlying the work-product privilege have already been achieved." In re Grand Jury Proceedings, 73 F.R.D. 647, 653 (M.D.Fla.1977).
 
 
 14
 Moreover, we deal in this case, not with the civil discovery situation, but rather with a Freedom of Information Act request. Here, the presumption in favor of disclosure is at its zenith. "(D)isclosure, not secrecy, is the dominant objective of the Act." Dep't of Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). As this court wrote in Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 259 (D.C.Cir.1977):
 
 
 15
 The exemptions from the mandatory disclosure requirement of the FOIA are both narrowly drafted and narrowly construed in order to counterbalance the self-protective instincts of the bureaucracy which, like any organization, would prefer to operate under the relatively comforting gaze of only its own members rather than the more revealing "sunlight" of public scrutiny. Where there is a balance to be struck, Congress and the courts have stacked the scales in favor of disclosure and against exemption.
 
 
 16
 Accordingly, we hold that, in the context of an FOIA request, attorney work-product from terminated litigation remains exempt from disclosure only when litigation related to the terminated action exists or potentially exists.II. APPLICATION OF THE "RELATED LITIGATION" TEST
 
 
 17
 Grolier seeks documents prepared for the Americana action. Since that suit was dismissed with prejudice five years ago, it cannot be resurrected. Grolier is also a plaintiff in a Ninth Circuit case challenging an FTC order, but that case and order apparently are not related in any way to the Americana action. See FTC's "Statement of Material Facts as to Which There is No Genuine Issue," P 9, JA 25. In addition, the FTC has long abandoned the covert investigation techniques discussed in the requested documents.
 
 
 18
 Under these circumstances, there does not appear to be any suit or potential suit related to the original Americana action. Nonetheless, since this issue has not been fully explored, we remand the case to the District Court for reconsideration of the applicability of the work-product privilege in light of the apparent absence of related litigation. This judgment applies to Documents 3, 5, 6, and 7. With respect to Document 1, while we find that the work-product privilege may not apply, the document is still exempt from disclosure under Exemption 5 because it is clearly a pre-decisional document. See Jordan v. U.S. Dep't of Justice, supra, 591 F.2d at 774. Thus, the judgment of the District Court as to Document 1 is affirmed.
 
 
 19
 The dissent would affirm the District Court's judgment because it concludes that "the present (FOIA) suit could not be more directly related to the Americana litigation." Dissent at 4. While we agree that the work-product privilege extends to a second case if the second case is closely related to the first, see id. at 3 (citing C. Wright & A. Miller), Judge MacKinnon has, in our judgment, misapplied this test. Indeed, we find it illogical to use the filing of an FOIA suit as the sole basis for foreclosing appellant's access to the requested documents. Under the dissent's theory, any material that was work product at any time would never be disclosable under FOIA because the filing of the FOIA suit itself would constitute "related" litigation. We reject this strange view of the related litigation test.
 
 
 20
 The Americana suit was a civil penalty action involving misrepresentation in door-to-door sales and false advertising. The government's investigation and litigation strategy in such an action obviously would have little, if anything, to do with its strategy in defending this FOIA suit. The FOIA suit does not in any way relate to the substance of the earlier litigation. Thus, for purposes of the work-product privilege, the two cases are neither "closely related" nor even "related."
 
 III. CONCLUSION
 
 21
 For the reasons given above, we affirm the judgment of the District Court as to Documents 1 and 4. However, we vacate the judgment of the District Court as to Documents 3, 5, 6, and 7, and remand the case for reconsideration of the applicability of the work-product privilege in light of the apparent absence of litigation related to the Americana suit.
 
 
 22
 So ordered.
 
 
 23
 MacKINNON, Circuit Judge (dissenting in part and concurring in part).
 
 
 24
 I concur in the Judgment insofar as it affirms the Judgment of the District Court with respect to Documents 1 and 4 but respectfully dissent from the vacation of the Judgment of the District Court with respect to Documents 3, 5, 6 and 7 and the remand to the District Court.
 
 
 25
 The majority opinion does not apply existing law. In my opinion the Judgment of the District Court as to Documents 3, 5, 6 and 7 should be affirmed on the ground that said documents are exempt from disclosure as the "working papers" of the attorneys and within the "attorney-client privilege" as reflected in the exemption set forth in 5 U.S.C. § 552(b)(5) ("Exemption 5") and because the termination of the litigation to which the work-product relates does not destroy this privilege. The majority opinion gives no credence to the "attorney-client privilege" of the work-product rule as embodied in Exemption 5.
 
 
 26
 The work-product rule was first articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947). There the Court, dealing primarily with work-product, i.e., statements taken by attorneys from potential witnesses, said:
 
 
 27
 the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order.
 
 
 28
 Much later, the Supreme Court noted in NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975) that the work-product rule was available to Government attorneys:
 
 
 29
 It is equally clear that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 and that such a privilege had been recognized in the civil discovery context by the prior case law.... (The) case law clearly makes the attorney work-product rule of Hickman v. Taylor ... applicable to Government attorneys in litigation. Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy.
 
 
 30
 Our opinion in Mervin v. FTC, 591 F.2d 821, 825 (D.C.Cir.1978) is to the same effect: ("... it is clear that Exemption five includes the attorney work-product privilege").
 
 
 31
 The Sears opinion, by Justice White, also pointed out that the traditional "attorney-client privilege" was subsumed in the work-product rule carried into FOIA by Exemption 5:
 
 
 32
 The Senate Report states that Exemption 5 "would include the working papers of the agency attorney and documents which would come within the attorney-client privilege if applied to private parties," S.Rep.No. 813, p. 2....
 
 
 33
 421 U.S. at 154, 95 S.Ct. at 1518. (Emphasis added)
 
 
 34
 As the majority notes, the four documents in question in the instant case clearly qualify as work-product. Majority at 2. Under the applicable rules, "(p)arties may obtain discovery regarding any matter, not privileged" and when discovery is ordered the court is admonished to "protect against disclosure of the mental expressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." F.R.Civ.P. 26. Documents 5, 6 and 7 are memoranda prepared by an attorney that reveal the attorney's thought processes in the preparation of the case.
 
 
 35
 Document 3 contains advice and instructions given by an attorney as to procedures that the Government should follow with respect to the preparation of certain aspects of the case. This is clearly the work-product of an attorney setting forth his mental processes, opinion and legal theory. It is also clearly within the traditional "attorney-client privilege." There is no question that it is protected from disclosure by Exemption 5.
 
 
 36
 My in camera inspection of the six documents involved in this case convinces me that they are all covered by the work-product rule, and, accordingly, by Exemption 5. There is nothing therein that is not work-product or that plaintiff would need to start a lawsuit.
 
 
 37
 The majority neatly sidesteps this point by saying, in essence, that even though the documents are bona fide work-product, the work-product rule and Exemption 5 are inapplicable insofar as no litigation related to the original Americana suit, United States v. Americana Corp., Civil No. 388-72 (D.N.J.), is currently under way and the methods of obtaining evidence discussed in the documents have apparently been long since discontinued.
 
 
 38
 This argument is not supported by the facts or the law. It is sound case law that "documents prepared for one case have the same protection in a second case, at least if the two cases are closely related." C. Wright & A. Miller, Federal Practice and Procedure § 2024 at 200-201 (1970). See Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480, 484 (4th Cir. 1971) (upon the termination of litigation the work-product documents of an attorney prepared incident thereto do not lose the qualified immunity extended to them under Rule 26(b)(3)); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 557-58 (2d Cir. 1967) (documents prepared by non-party attorney in prior litigation are protected from adversary disclosure in subsequent litigation as attorney's work-product and by attorney-client privilege where documents reflected attorney's mental processes); Philadelphia Electric Company v. Anaconda American Brass Co., 275 F.Supp. 146, 147 (E.D.Pa.1967) (documents prepared in defense of a criminal antitrust action are within the work-product rule in a subsequent civil action).
 
 
 39
 Other cases also hold that the work-product privilege as carried forth by Exemption 5 is not destroyed by the termination of initial litigation. In Mervin v. FTC, supra, wherein a former FTC employee sued unsuccessfully to force disclosure of documents related to an earlier suit for reinstatement, this court held that the work-product privilege may extend past the end of the litigation to which the work-product relates. See also National Public Radio v. Bell, 431 F.Supp. 509, 512 (D.D.C.1977) ("Despite plaintiff's unsupported contention that Exemption 5 protection 'disappear(s) when no further legal action is in prospect,' there can be no doubt but that the documents in question fall squarely within the protective scope of ... the exemption").
 
 
 40
 In the instant case, as the majority suggests, petitioner's request for disclosure relates directly to the FTC's April, 1973, investigation of Americana Corporation and Grolier Incorporated. That investigation resulted in United States v. Americana Corporation, supra, a civil penalty action filed by the government. The suit was dismissed on November 16, 1976.
 
 
 41
 Petitioner, who was a co-defendant in the earlier Americana suit, now requests disclosure under FOIA of documentary material prepared, and advice given, by government counsel that related directly to strategy and tactics to be followed by the government in the Americana litigation. Contrary to the majority's remarkable assertion that "the two cases are neither 'closely related' nor even 'related'," Majority at 9, the present suit could not be more directly related to the Americana litigation. The work-product privilege as embodied in Exemption 5, inclusive of the "attorney-client privilege (as) applied to private parties," would even in the majority's judgment, have applied in Americana. Therefore, it properly extends to the instant case as well. The majority attempts to divert attention from this most obvious of conclusions by decrying the fact that according to such a finding, "any material that was work product at any time would never be disclosable under FOIA because the filing of the FOIA suit itself would constitute 'related' litigation." At 557. This lament bespeaks a fundamental failure to grasp the raison d'etre of Exemption 5. It was precisely to protect bona fide work product and privileged attorney-client matter from the likes of FOIA requests that Exemption 5 was enacted in the first place. NLRB v. Sears, Roebuck & Co., 421 U.S. at 154, 95 S.Ct. at 1518; Mervin v. FTC, 591 F.2d at 825. A FOIA request such as is made in the instant case is the typical "related" litigation contemplated by the statute. As such, it is properly turned away on Exemption 5 grounds.
 
 
 42
 The requested material is thus exempt as expressing the attorney's thoughts and strategies,[1] and because the ideas expressed constitute privileged advice by an attorney to his client, NLRB v. Sears, Roebuck & Co., 421 U.S. at 154, 95 S.Ct. at 1518. I would accordingly affirm the Judgment of the District Court in all respects and hold that the documents are exempt from disclosure under 5 U.S.C. § 552(b)(5).
 
 
 
 [1]
 5 U.S.C. § 552 (1976)
 
 
 [2]
 Id. § 552(b)(5)
 
 
 [3]
 Grolier has withdrawn its claim for disclosure of Document 2. As for Document 4, we affirm the District Court's judgment that the document was exempt from disclosure under Exemption 5 as an attorney-client communication
 
 
 [4]
 Most cases dealing with this subject are from District Courts. Few discovery cases reach the appellate level because interlocutory orders are not appealable under the final order doctrine. Note, 1974 Duke L.J. 799, 817 n.95
 
 
 [5]
 This intermediate view is consistent with Mervin v. FTC, 591 F.2d 821 (D.C.Cir.1975), which the dissent cites. In Mervin the plaintiff brought suit for disclosure of documents under the FOIA and for job reinstatement and damages on the basis that his dismissal was wrongful. Id. at 824. Mervin sought disclosure of documents prepared by government attorneys while defending an earlier suit for job reinstatement he had brought, which had been dismissed for failure to exhaust administrative remedies. Id. at 825. Thus the documents Mervin sought as part of his second suit for reinstatement were the government's work product from his first suit for reinstatement. The two actions were not merely closely related, they were identical
 
 
 [6]
 Indeed, courts extending the privilege to subsequent cases have often relied on the qualified nature of the privilege in doing so. See, e.g., United States v. Leggett & Platt, Inc., 542 F.2d 655, 660 (6th Cir. 1976), cert. denied, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977) ("Were the work product doctrine an unpenetrable protection against discovery, we would be less willing to apply it to work produced in anticipation of other litigation. But the work product doctrine provides only a qualified protection against discovery * * *.")
 
 
 [1]
 The analysis of the majority places great weight on the fact that "(t)he government's investigation and litigation strategy in such an action obviously would have little, if anything, to do with its strategy in defending this FOIA suit." At 557. I am hard pressed to glean how this point bears the slightest relevance to this proceeding. The relative strategies in the two suits in question are immaterial in this inquiry. All we are concerned with here is that the strategies in the original Americana litigation were bona fide work product. That they were means that they are protected in the instant case by Exemption 5. The strategy employed by the government in the instant case is of absolutely no concern to us here and, accordingly, is useless in support of the majority's opinion