**Olaguibeet A. López PACHECO et al., Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION et al., Defendants.**

Civ. No. 76–83.

United States District Court, D. Puerto Rico.

May 10, 1979.

---

1094

Arturo Aponte Paré, Roberto Busó Aboy, Rafael L. Franco Gracia, Hato Rey, P. R., for plaintiff.

Julio Morales Sanchez, U. S. Atty., Hato Rey, P. R., for defendants.

## DECISION AND ORDER

TORRUELLA, District Judge.

The present suit was commenced on January 23, 1976, when Plaintiff filed a complaint against the Federal Bureau of Investigation (hereinafter referred to as the F.B.I.) and its Director, seeking disclosure of certain records in their possession pertaining to Plaintiff and his son. Jurisdiction was predicated on the Freedom of Information Act, as amended, 5 U.S.C. § 552(a)(4)(B). Shortly after the initiation of suit, the Court stayed the proceedings pending exhaustion of the available administrative remedies.

Progressive disclosures were made by the agency as a result of Plaintiff's pursuit of his claims at the administrative level.[1] In the interim, Plaintiff's complaint herein was amended twice. As now framed by the extant pleading, this action is based on the Freedom of Information Act, as amended (hereinafter referred to as FOIA), 5 U.S.C. § 552 and the Freedom of Information and Privacy Act, as amended, (hereinafter referred to as FOIPA) 5 U.S.C. § 552a. Plaintiff seeks an injunction against withholding certain information, as well as an order directing Defendants to amend some of the records that have been disclosed. The named Defendants now are the F.B.I., its Director, the United States Department of Justice and the Attorney General of the United States.[2]

Several matters are pending resolution by this Court. On August 30, 1978 the Defendants filed a Motion for Summary Judgment asserting full compliance with their duties under the FOIA and the FOIPA. Plaintiff requested that consideration of said Motion be held in abeyance pending completion of his discovery endeavors. Hence, his opposition was not submitted

---

1. By letter dated March 19, 1976 the F.B.I. released to Plaintiff 111 pages of material from records maintained in the Central Records of the F.B.I. Headquarters, pertaining to himself and his son, Olaguibeet A. López Vera. Plaintiff filed an administrative appeal on April 21, 1976, as a result of which 84 additional pages were released, along with those previously disclosed, but with fewer excisions.

2. On October 20, 1978, Defendants' request for dismissal as to the F.B.I., its Director and the Attorney General of the United States was denied by us on the grounds set forth in *Hamlin v. Kelley*, 433 F.Supp. 180 (N.D.Ill., 1977).

until February 1, 1979.[3] A Motion for In Camera Inspection and a Cross Motion for partial summary judgment were also filed by the Plaintiff on March 9, and April 12, 1979 respectively. As of this date, the first of these two requests remains unopposed.

Any resolution on the merits at the present instance would now be premature should an in camera examination be deemed necessary. We shall thus address ourselves to this aspect first.

## I. PLAINTIFF'S MOTION FOR IN CAMERA INSPECTION.

Plaintiff vehemently requests that we hold an in camera examination of the entire records of himself and his son held by Defendants "to determine whether the records or any portion of the records held by Defendants . . . may be withheld from him under any of the exemptions claimed by Defendants and what records have been withheld without any claim of exemption."

The FOIA expressly provides for in camera examination of agency records. 5 U.S.C. § 552(a)(4)(B).[4] However, the Act does not contemplate in camera line-by-line inspections whenever a FOIA Plaintiff expresses incredulity concerning the agency's deletions of portions of documents under 5 U.S.C. § 552(b) in fine. Weissman v. Central Intelligence Agency, 184 U.S.App.D.C. 117, 122–23, 565 F.2d 692, 697–698 (1977). Congress made it clear that this section merely "permit[s] such in camera inspection at the discretion of the Court." H.R.Rep. No. 93–1380, Conference Rep. 93d Cong., 2d Sess. 9 (1974). Before such inspection is ordered, the Government must be afforded the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure. Ibid. See also, S.Rep. No. 93–854, 93d Cong., 2d Sess. 15 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267; Bell v. United States, 563 F.2d 484 (C.A. 1, 1977).

In the case at bar we do not believe that "the record is vague or the agency claims too sweeping or suggestive of bad faith" so as to warrant an in camera examination. Weissman v. Central Intelligence Agency, supra 184 U.S.App.D.C. at p. 123, 565 F.2d at p. 698. Although the burden of proof is on the agency claiming exemptions, and even though courts must apply that burden with an awareness that the Plaintiff is at a disadvantage in attempting to controvert the agency's assertions, it is also true that a submission by the agency of an index of withheld documents, accompanied by detailed justifications for their non-disclosure may adequately permit courts to evaluate the merits of Defendants' claims of exemptions. In this task, the court is expected to accord "substantial weight" to the agency's affidavit. Bell v. United States, supra, at 487. See, Ollestad v. Kelley, 573 F.2d 1109 (C.A. 9, 1978); Vaughn v. Rosen, 157 U.S.App.D.C. 340, 344, 484 F.2d 820, 824 (1973), cert. denied 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

An evaluation of the record in light of the aforestated principles convinces us that no in camera review of documents need be conducted in this case. The Defendants have submitted copies of all the documents forwarded to Plaintiff. Those documents have been numbered and precisely identified in detailed affidavits by Special Agents John F. Loome, Jr., and Lowell B. Strong. These sworn statements, together with the detailed explanations which accompany each of the documents, describe in detail the contents of each excised or withheld record, citing and pinpointing the specific exemptions under which the F.B.I. has denied disclosure.

Most of the claimed exemptions pertain to portions of documents otherwise dis-

---

**3.** A second request for postponement of the Motion was filed by Plaintiff on that same date. Defendants answered the outstanding interrogatories on April 9, 1979 and the matter is finally ripe for disposition.

**4.** The cited provision reads in part:

". . . [T]he court . . . may examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section . . . ."

closed. The *raison d'etre* for the excisions can be reasonably gleaned from the exhibits on file. These factors tend to indicate that the agency has not exempted whole documents merely because they contained some exempt material. See, *Weissman v. Central Intelligence Agency,* supra, 184 U.S.App. D.C. at 123, 565 F.2d at 698.[5] We believe that the record is sufficiently pellucid to permit legal rulings without having to undertake further probes at this stage. See, *Vaughn v. Rosen,* supra, 157 U.S.App.D.C. at 344, 484 F.2d at 824. See also, *Mead Data Central, Inc. v. U. S. Dept. of Air Force,* 184 U.S.App.D.C. 350, 566 F.2d 242 (1977); *Fonda v. Central Intelligence Agency,* 434 F.Supp. 498 (D.C.D.C., 1977); *Marks v. Central Intelligence Agency,* 426 F.Supp. 708 (D.C.D.C., 1976); *Heublein, Inc. v. F. T. C.,* 457 F.Supp. 52 (D.C.D.C., 1978). As the Court of Appeals for the District of Columbia so aptly stated in *Weissman v. Central Intelligence Agency,* supra:

> "In every FOIA case, there exists the possibility that Government affidavits claiming exemptions will be untruthful. Likewise, in every FOIA case it is possible that some bits of non-exempt material may be found among exempt material, even after a thorough agency evaluation. If . . . these possibilities are enough automatically to trigger an *in camera* investigation, one will be required in every FOIA case. This is clearly not what congress intended . . ." 184 U.S.App.D.C. at 122, 565 F.2d at 697 (footnote omitted).

Considering the above, Plaintiff's Motion for in camera inspection is hereby DENIED. We shall thus proceed to address the merits based on the record before us.

## II. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.*

Defendants contend that the present action can be resolved without a trial, in consonance with the criteria set forth in F.R.Civ.P. 56.

In the Second Amended Complaint filed herein it is alleged that the F.B.I. has possession of a photograph of Plaintiff, allegedly taken without his knowledge or permission, in asserted violation of Plaintiff's privacy rights; that the agency has failed to disclose records concerning Plaintiff and his son; that some of the information contained in the records of the F.B.I. is "false, untrue and baseless"; that Defendant agency maintains records describing how Plaintiff exercises rights guaranteed by the First Amendment in alleged violation of 5 U.S.C. § 552a(e)(7); that the F.B.I. has not specifically indicated the reason for each particular excision and failed to establish the applicability of the exemptions claimed;[6] that the documents withheld from disclosure as records "currently and properly classified pursuant to Executive Order 11652" were not properly classified; that Defendant Agency has blocked Plaintiff's rights by failing to notify him of his right to judicial review as mandated in 5 U.S.C. § 552a(d)(3), and that Defendants have intentionally and willfully refused to comply with Plaintiff's request to amend his and his son's records. At this juncture, we deem it necessary to refer to certain general principles which ought to guide this Court in its resolution of the issues raised herein.

An agency faced with a request for information under the statute is bound to disclose all the information in its hands unless it is exempted. *Morton-Norwich Products, Inc. v. Mathews,* 415 F.Supp. 78, 81 (D.C.D.C., 1976). This principle mirrors the dual objectives embodied in the FOIA. It is true that the statute's limited exceptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of Air*

---

5. It is conceded that progressive disclosures were made as Plaintiff pursued his administrative remedies. This tends to detract from the need to conduct the examination requested by Plaintiff. *Varona Pacheco v. F. B. I.,* 456 F.Supp. 1024, 1029, (D.C.P.R., 1978).

6. At the outset we should point out that this allegation has been rendered moot, at least as to the documents covered in Defendants' submission (Exhibit V).

*Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). But on the other hand, the Act "seeks to preserve the confidentiality undeniably essential in certain areas of Government operations." *F. A. A. Administrator v. Robertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975). With these principles in mind, we will engage in the delicate task of balancing the competing interests at stake.

As we indicated hereinbefore, Defendants have filed detailed affidavits by Special Agents of the F.B.I., together with an Exhibit "V" in support of their Motion for Summary Judgment. Said Exhibit V is an indexed compilation of the documents released, the withheld information and the statutory grounds for deletion. These, together with Plaintiff's sworn statement, Defendants' responses to discovery requests and the pertinent pleadings on file, shall form the frame of reference of our inquiry, against which the claimed exemptions will be analyzed in turn.

## A. *EXEMPTIONS UNDER 5 U.S.C. § 522(b)(7)(C)*

Pursuant to this subsection of the FOIA, investigatory records compiled for law enforcement purposes are exempted from disclosure, to the extent that their production would constitute an unwarranted invasion of personal privacy.

Documents 3, 4, 5, 6, 9, 10, 11, 13, 16, 17, 18, 30, 33, 34, 35, 36, 37, 38, 44, 47, 48, 50, 51 and 54 of Exhibit V were released with deletions made to withhold information under exemption (b)(7)(C) of Section 522 of the Act. As revealed by Loome's affidavit and the Index in Exhibit V, excised were the names of Special Agents of the F.B.I., other federal employees and officers of the United States Air Force; information that would reveal an investigative interest in a person other than Plaintiff or his son and information which would invade the person-al privacy of a source or of persons interviewed by the F.B.I.[7]

Defendants state under oath, that the purpose behind this claim for exemption in this case, when asserted to withhold the identities of Special Agents of the F.B.I. and employees of other Government agencies, is to protect them from unnecessary questioning and intrusion into their private lives by members of the public. Concerning the names, background data and other identifying information of third parties, it is Defendants' position that to release the same would reveal to the world that those persons were of F.B.I. interest or that they were in some way connected with an F.B.I. investigation, in violation of these persons' rights to privacy.

Plaintiff does not specifically rebut the justifications advanced by Defendants with regard to this exemption. Instead, Plaintiff argues that the F.B.I., while claiming this exemption in many documents, failed to protect the identities of several private parties in their disclosure and that the excision of F.B.I. Agents' names is not justified under the holding of *Ferguson v. Kelley,* 448 F.Supp. 919 (D.C.Ill., 1978).

 The exemption established in 5 U.S.C. § 552(b)(7)(C) is very broad in scope, in that it protects anyone whose privacy might be invaded as a result of disclosure of information that could plausibly reveal their identities. *Shaver v. Bell,* 433 F.Supp. 438, 440 (N.D.Ga., 1977).[8] In deciding whether the exception is well invoked, we are bound to apply a balancing test "between an individual's right of privacy and the preservation of the public's right to government information." *Campbell v. United States Civil Service Commission,* 539 F.2d 58, 61 (C.A. 10, 1976). In this context, an important consideration is "the extent or value of the public interest purpose or object of the individuals seeking disclosure."

---

**7.** This justification was usually asserted in conjunction with exemption (b)(7)(D), to be discussed hereinafter.

**8.** It is interesting to note that the Court in *Shaver* found ample justification for nondisclo-sure under the subsection here in question. In so concluding, the Court placed primary reliance on an affidavit prepared by Special Agent John F. Loome, who is also an affiant in this case. 433 F.Supp. at 440, n.2.

*Ibid.*, see also, *Department of the Air Force v. Rose*, supra, 425 U.S. at 372–373, 96 S.Ct. 1592.

■ Applying the foregoing principles to the case at bar, we have not been shown that the public interest in disclosure is so paramount as to overweigh the legitimate privacy interests at stake. Cf. *Disabled Officer's Ass'n. v. Rumsfeld*, 428 F.Supp. 454, 457–458 (D.C.D.C., 1977). It is true that the case of *Ferguson v. Kelley*, supra, stands for the proposition that F.B.I. agents and other public employees have no privacy rights to the deletion of their names from government records. *Id.* at 923. However, to the extent that more convincing precedent says otherwise, we decline to embrace this aspect of the *Ferguson* decision. As the Fourth Circuit laid down its view in *Nix v. United States*, 572 F.2d 998 (1978):

"One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives. While the right of privacy to these F.B.I. agents is perhaps minimal, we find that the public interest in the identification of the F.B.I. agents . . . to be even less." *Id.*, at 1006 (footnote omitted).

Likewise, in the instant case we fail to see how the identification of every F.B.I. agent or employee who may have participated in the official probes[9] pertaining to Plaintiff and his son could foster any significant public interest when pertinent countervailing interests are taken into account. By the very nature of the (b)(7)(C) exemption, most of the deletions made thereunder comprise portions of comparatively restricted dimensions. Neither the Plaintiff nor the public can be deemed to be prejudiced

by such a relatively innocuous action. See, *Varona Pacheco v. F.B.I.*, supra; *Malloy v. United States Department of Justice*, 457 F.Supp. 543 (D.C.D.C., 1978); *Flower v. Federal Bureau of Investigation*, 448 F.Supp. 567 (W.D.Tex., 1978).

The same holds true regarding those names deleted from the documents because the individuals were the focus of F.B.I. interest or, either willingly or not were subject to interviewing in any quest on Plaintiff or his son. As in the case of government officials, Plaintiff has claimed no particular need for this information which could override preeminent privacy interests. *Ferguson v. Kelley*, supra, at 923, n.2. Those interests have been adequately described in *Maroscia v. Levi*, supra, as follows:

"It is proper that such material be withheld in order not only to protect those citizens who voluntarily provide law enforcement agencies with information, but also to insure that such persons remain willing to provide such information in the future. Furthermore, references to third parties may be properly deleted to protect their privacy and to minimize the public exposure or possible harassment of those persons mentioned in the files. Their claim to privacy under Exemption 7(c) outweighs the minimal public interest which would be served by release of their names." 569 F.2d, at 1002; see also, *Forrester v. U. S. Dept. of Labor*, 433 F.Supp. 987, 989 (S.D.N.Y., 1977).

■ Our present holding is in no way altered by the fact that certain names which could arguably be covered by the exemption have not been deleted from the documents. The FOIA is "neutral", in the sense that it does not prohibit the disclosure of exempt information. *Charles River Park "A" Inc. v. Department of Housing and Urban Development*, 171 U.S.App.D.C. 286, 519 F.2d 935 (1975). Hence, nothing can lend support to a waiver theory under these

9. In our opinion, there can be no question that the deletions have been made from records clearly compiled for law enforcement purposes, within the meaning of 5 U.S.C. § 552(b)(7). See, *Irons v. Bell*, 596 F.2d 468 (C.A. 1, 1979);

*Center for Nat. Policy Review on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); see also, *Maroscia v. Levi*, 569 F.2d 1000 (C.A. 7, 1977).

circumstances, considering that no bad faith has been demonstrated and that the Plaintiff's interests have in no way been hampered by the disclosure in question.

The record has permitted us to precisely correlate the justifications advanced by Defendants with the portions of documents actually deleted. An application of the aforestated legal grounds to the precise circumstances of this case leads us to conclude that the deletions made in the aforementioned documents pursuant to 5 U.S.C. § 552(b)(7)(C) are proper and that Defendants are entitled to Judgment in their favor concerning the same.

### B. *EXEMPTIONS UNDER 5 U.S.C. § 552(b)(7)(D)*

Documents 3, 6, 11, 18, 33, 34, 35, 36, 37, 38, 44, 46, 47 and 48 of Exhibit V were released to Plaintiff with deletions made pursuant to 5 U.S.C. § 552(b)(7)(D). This provision exempts from the disclosure obligations of the FOIA investigatory records compiled for law enforcement purposes, where production would "disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source."

The deletions made in the documents enumerated above include informant symbol numbers, information provided under an express or implied assurance of confidentiality, both from individuals and from law enforcement authorities in the State of Washington, and the identities of confidential sources or information that can lead to an identification of such sources. The reasoning behind the invocation of subsection (b)(7)(D) in this case appears in the affidavit of Special Agent Loome as follows:

"The identity of a person interviewed has been traditionally protected by the F.B.I. on the basis that the information received from these individuals was received confidentially. . . . When Agents of the F.B.I. conduct interviews, they seek information concerning individuals or matters within the investigative jurisdiction of the F.B.I. Persons interviewed often assume, quite logically, that the information they furnish is for the assistance of the F.B.I. only, in the fulfillment of its responsibility, and that their identities and the fact they cooperated with the F.B.I. will not be publicly exposed. Even witnesses to a crime who may expect to be called upon at a later date to testify in public during the course of a criminal prosecution should be secure in the knowledge that, absent the necessity of such public testimony, with its attendant judicial restraints and protection, the assistance rendered to their government will be held in confidence which will not be violated. The fear of such exposure all too often inhibits the cooperation of otherwise conscientious citizens. This consideration has been met by the traditional willingness and ability of the F.B.I. to assure persons interviewed that their identities would be protected. . . . Significantly, protection by exemption from disclosure is afforded by the statute to the information furnished solely by the source, as well as the actual identity of the source. This recognizes the reality that the identity of a source may be determined from an analysis of the information furnished by the source. This is particularly true when the analysis would be made by a knowledgeable person, familiar with the facts and circumstances which the information involves. To disclose the identity of a person interviewed under such circumstances would be more than an unwarranted invasion of his personal privacy. It would breach the confidentiality under which he was interviewed.

"While the sources referred to in the preceding paragraph were expressly or impliedly assured that the information would be received confidentially, there are other sources quoted in the pertinent documents from whom information was received under an expressed assurance of confidentiality. This information was re-

ceived with the understanding that it would be held in strictest confidence. The experience of the F.B.I. in the area of confidential sources has lead to the policy of treating these individuals in a special way because of the information being received and the possible harm that may befall them if their identities were known. The manner in which the F.B.I. obtains information from these sources is demonstrative of the expressed assurance of confidentiality under which it was received. It is only with the understanding of complete confidentiality that the aid of such people can be enlisted in the first place, and only through this understanding, that such individuals can be persuaded to continue providing valuable assistance in the future.

"Confidential source material sought to be protected by assertion of (b)(7)(D) also includes local and state law enforcement agencies. The F.B.I. is firmly convinced that any adverse effect on the existing system of exchange of information between cooperating law enforcement agencies, both local and worldwide, would lead to disastrous far-reaching consequences on innumerable law enforcement proceedings, both actual and contemplated. The F.B.I. has been made aware that unless the confidentiality under which information exchanges currently exist is continued, the willingness of participating agencies to exchange essential information will be terminated. The same principles underlying the exchange of information on an international basis have also been the foundation for such exchanges between Federal and state law enforcement. That is, it has been based on a traditional understanding of confidentiality which is reinforced on a daily basis through contacts which Special Agents of the F.B.I. have with local law enforcement personnel. The free flow of information between cooperating law enforcement agencies plays an integral part in the solution of investigations on a daily

basis. Without the assurances of confidentiality, upon which the exchange is based, the F.B.I.'s ability to carry out its investigative responsibilities would be seriously impaired."

Plaintiff attacks the sufficiency of Agent Loome's sworn statement on the grounds that the affiant did not make any promises to sources nor was he present when information was given in each case. Concerning the particular items assertedly exempted, Plaintiff argues that the records and information received from law enforcement authorities in the State of Washington,[10] as well as the name of a credit bureau,[11] have been improperly exempted by Defendants.

 Exemption (b)(7)(D) of the FOIA was intended "to protect the disclosure of the identity of informants, and information received from informants." *Committee on Masonic Homes, Etc., v. NLRB*, 414 F.Supp. 426, 433 (E.D.Pa., 1976), vacated on other grounds 556 F.2d 214 (C.A. 3, 1977). Thus, if the provider of the information was a confidential source, both his identity as well as all of the information given by or related to him fall under the statutory exemption. *Shaver v. Bell*, supra. The joint explanatory statement of the House and Senate conferees respecting the 1974 amendments to the FOIA contains the following expressions:

"The conference substitute follows the Senate amendment except for the substitution of 'confidential source' for 'informer' . . .

"The substitution of the term 'confidential source' in section 552(b)(7)(D) is to make clear that the identity of a person other than a paid informer may be protected if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. Under this category, in every case where the investigatory records sought were compiled for law enforcement purposes—either civil or criminal in

---

**10.** See note 17, infra.

**11.** Excised from page 3 of Document 11, Exhibit V.

nature—the agency can withhold the names, addresses, and other information that would reveal the identity of a confidential source who furnished the information. However, where the records are compiled by a criminal law enforcement authority, *all* of the information furnished only by a confidential source may be withheld if the information was compiled in the course of a criminal investigation."

Conf.Rep. No. 1200, 93d Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 6285, 6291 (emphasis in the original).

▆▆▆ Addressing ourselves to Plaintiff's challenge to the validity of Agent Loome's affidavit, we believe that it sufficiently shows that the information was acquired under an implied or express assurance of confidentiality "or in circumstances where such an assurance may reasonable be inferred." Ibid., *Nix v. United States,* supra. In his sworn statement, F.B.I. Agent Loome stated "the sources [in question] were expressly or impliedly assured that the information would be received confidentially, [and] there are other sources . . . from which information was received under an expressed assurance of confidentiality.

This information was received with the understanding that it would be held in strictest confidence." This assertion should not be considered in isolation, but ought to be viewed in conjunction with the detailed and specific descriptions prefacing each and every one of the documents contained in Exhibit V, where the Defendants particularize the nature of the information excised under exemption (b)(7)(D), permitting a reasonably careful peruser to ascertain whether the aforestated standards were complied with.[12] See, *Maroscia v. Levi,* supra, at 1002. It is true that in every FOIA case there exists the possibility of inaccuracies in government affidavits. *Weismann v. Central Intelligence Agency,* supra, 184 U.S.App.D.C. at 122, 565 F.2d at 697. It is also true that the best statements would undoubtedly be those made by someone with direct personal knowledge of the investigatory transactions involved. But to accept Plaintiff's theory that every invocation of subsection (b)(7)(D) must be made by the specific agent who interviewed each source or who personally gave them promises of confidentiality would convert the evidentiary procedure contemplated by Congress[13] into a practical impossibility and would require long and time consuming tri-

12. The following is one of the descriptions contained in Exhibit V:

"This document is an investigative report prepared by a Special Agent of the FBI, relating to the Civil Rights investigation, wherein plaintiff's son was the alleged victim. The names of Special Agents of the FBI were excised from all pages wherein their names appeared, utilizing exemption (b)(7)(C) to protect their personal privacy. The name of a credit bureau was deleted from page 3, asserting exemption (b)(7)(D), inasmuch as information from this source was received under an implied assurance that the confidentiality of the source would be protected. The name of the credit bureau employee was excised under exemption (b)(7)(C), in order to protect the personal privacy of that individual. Pages 4 through 14 and 55 through 66 contain information received from enforcement authorities in the State of Washington, which was furnished to the FBI under an express assurance of confidentiality. Material was either excised or the complete page was withheld inasmuch as disclosure is protected by exemption (b)(7)(D). This material was expressly requested to be withheld by those authorities. The names and information which would identify individuals interviewed was deleted from pages 35 through 38, asserting exemption (b)(7)(D) in conjunction with (b)(7)(C) to protect them as source or their right to privacy. Pages 39 through 54 also contain the results of interviews with persons who provided information relating to this investigation which were withheld in their entirely asserting (b)(7)(D) in conjunction with (b)(7)(C). Exemption (b)(7)(D) was asserted for material withheld in the above stated pages 35 through 54, inasmuch as the information therein was provided under an implied assurance of confidentiality the disclosure of which would constitute a breach of the confidence under which it was received. Exemption (b)(7)(C) was cited also to protect the personal privacy of the individuals interviewed. The exemption (b)(7)(C) was also utilized to withhold the names of Air Force personnel who witnessed the above stated interviews in order to protect their personal privacy as well."

13. *Vaughn v. Rosen,* supra.

als even in the clearest cases. We are not convinced that Defendants must meet such an exacting burden. See, [1974] *U.S.Code Cong. & Admin.News,* at p. 6290.[14] As Judge Gesell accurately expressed in *Morton-Norwich Products, Inc. v. Mathews,* supra:

". . . The Freedom of Information Act must proceed in an atmosphere of confidence in government. If the agency cannot be trusted, the Act will never work. It is a profound mistake to transfer administrative responsibility to judges on the theory that persons employed by the Executive branch are not honest or lack judgment." 415 F.Supp., at 83.

In light of the above, it is now incumbent on us to consider the specific items in dispute.

■■■■■■ At threshold, we note that Plaintiff does not seriously quarrel with the agency's decision to delete informant symbol numbers from the records produced. Clearly, these excisions are amply justified under subsection (b)(7)(D), insofar as disclosure would propend to the divulgement of the identity of informants, an evil which the exemption, by its very language was designed to discourage. Therefore, the excisions made on this ground are justified and must be upheld. Regarding the deletions made on page 3 of Document 11, i. e., the names of a credit bureau and of one of its employees, we cannot accede to Plaintiff's insistence on disclosure. The names of commercial or financial sources are exempt under 5 U.S.C. § 552(b)(7)(C) and (D). *Varona Pacheco v. F.B.I.,* supra, at 1030. Specifically, the identity of persons who supply such routine information as credit reports or personnel information has been held to fall within the statutory exemptions, particularly where, as here, Plaintiff has demonstrated no real need to obtain said information. See, *Ferguson v. Kelley,* supra, at 925.

Invoking exemption (b)(7)(D), the Defendants have also withheld pages and portions of documents containing information provided under express or implied assurances of confidentiality. Withheld on this ground are page 5 of Document 3, pages 39 to 54 of Document 11, page 2 and portions of page 3 of Document 18, as well as portions of Documents 33, 34, 38, 44, 47 and 48. The thrust of Plaintiff's objection to these excisions, which is the sufficiency of the Loome's affidavit, has already been considered by the Court. The detailed nature of Defendants' submission adequately enables us to analyze the deletions against the applicable legal considerations.

■■■ Persons who give information to law enforcement agencies under express or tacit agreements of secrecy are "confidential sources" for purposes of the subsection of the F.O.I.A. in question here. Nothing in this case suggests that the excised information has not been furnished "only" by such confidential sources, and the same is therefore protected under the second phrase of subsection (b)(7)(D). *Nix v. United States,* supra. Moreover, even if we assume that part of said information substantially overlaps with released information, withholding is justified if a substantial risk is asserted that the sources' identities would become ascertainable by disclosure; certainty of identification not being required by the Act. *Ibid.*

The test was authoritatively explained by Senator Hart, author of the 1974 amendments to the FOIA, as follows:

"[T]he agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information . . . supplied by a confidential source. . . . [T]he F.B.I. [need not] prove the disclosure would reveal an informer's identity; all the F.B.I. has to do is to state ⁺hat the information was

---

14. We decline to follow the holding in *Nemetz v. Department of the Treasury,* 446 F.Supp. 102 (N.D.Ill., 1978) insofar as it may apply to subsection (b)(7)(D). The Court in *Nemetz* was dealing with exemption 552a(k)(5) of the FOIPA.

furnished by a confidential source and it is exempt. . . . ." [15]

When the present record is tested by the foregoing requirements, we reach the forceful conclusion that the invocation of subsection (b)(7)(D) in the instant case is warranted, that no bad faith is apparent and that Defendants are entitled to summary judgment, as regards the excisions made under said subsection. This is also true concerning the withholding of information received by the F.B.I. from law enforcement authorities in the State of Washington.[16] The record reveals that the F.B.I. was willing to disclose that information and made an earnest appeal to the Washington authorities for permission to release the documents. (Defendants' Exhibit L). On November 16, 1977 the Washington authorities refused permission on the grounds that statutes in the State of Washington prohibit the release of the information involved. The letter written to the Associate Deputy Attorney General by Donald C. Brockett, from the Spokane County Court Police, reads in part as follows:

"I can appreciate the concern that you have with Dr. López-Pacheco learning finally that his son was not executed by the police as he has believed. I do not think, however, that is the question involved. The matter to be determined is whether or not once local law enforcement agencies release information to the F.B.I., that information may be released by the federal agencies by virtue of the Freedom of Information Act. It is our position that if information given to the federal agencies is subject to such release without the statutory constraints of the State of Washington being followed, further information of such nature will not be available to federal agencies." (Defendants' Exhibit L).

Plaintiff argues that the (b)(7)(D) exemption is only applicable to *persons*, not to entities such as law enforcement agencies. Again, sole reliance is placed by Plaintiff on *Ferguson v. Kelley*, supra, at 925. Once more, we decline to embrace the construction of the FOIA made in *Ferguson*, as regards this aspect of the instant case. More convincing precedent makes it clear that the Congressional intent to protect against disclosure of confidential information does extend to material provided by law enforcement agencies. *Church of Scientology v. Department of Justice*, supra, at 1302–1303; accord: *Maroscia v. Levi*, supra. In this context, the refusal to disclose on the part of the originating agency is indicative of an interest in confidentiality that deserves protection under the Statute as "information furnished only by the confidential source." 5 U.S.C. § 552(b)(7)(D). It is in the public interest that such a cooperative arrangement between the F.B.I. and a State police department not be breached, specially where the latter objects to disclosure. *Lesar v. U. S. Dept. of Justice*, 455 F.Supp. 921 (D.C.D.C. 1978). ". . . Congress did not intend to throw open the confidential files of law enforcement to the general public . . . [and nothing] support the proposition that confidential information provided by law enforcement agencies [is] any less important to the mission of federal law enforcement than information provided by ordinary citizens." *Church of Scientology v. Department of Justice*, supra, at 1303.[17]

### C. *SECTION 552(b)(1) OF THE FOIA*

This provisions exempts from disclosure those matters that are "specifically authorized under criteria established by an Exec-

---

**15.** Quotation taken from *Church of Scientology, etc. v. U. S. Dept. of Justice*, 410 F.Supp. 1297, 1303 (C.A.Cal.1976).

**16.** This information has been withheld in its entirety. It covers pages 4 through 14 and 55 through 66 of Document 11.

**17.** It should also be noted that, to the extent that statutes of the State of Washington forbid

disclosure, Section 552(b)(3) of the FOIA arguably furnishes additional support for the deletions in Document 11. See, *National Commission on Law Enforcement and Social Justice v. Central Intelligence Agency*, 576 F.2d 1373 (C.A. 9, 1978), but see, *American Jewish Congress v. Kreps*, 187 U.S.App.D.C. 413, 574 F.2d 624 (1978).

utive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to Executive order."

The (b)(1) exemption is solely invoked by Defendants in relation to Document 33 of Exhibit V. The document is an F.B.I. report compiled by the San Juan Office, dated April 28, 1965, and consists of a total of 17 pages. It has underwent minor deletions under the subsections discussed hereinbefore. As to those made pursuant to exemption (b)(1), a detailed affidavit by Special Agent Lowell B. Strong[18] pinpoints the portions excised thereunder, and enables us to make a legal ruling without the necessity of conducting further proceedings. According to said affidavit, the document in question was classified by the affiant in accordance with the standards set forth in EO 11652. Succinctly stated, EO 11652 defines the "confidential" classification level assigned to Document 33 as "national security information or material which requires protection. The test for assigning 'confidential' classification shall be whether its authorized disclosure could reasonably be expected to cause damage to the national security." The two exemption categories of EO 11652 which are of relevance here are: (1) "Classified information or material specially covered by statute, or pertaining to cryptography, or disclosing intelligence sources or methods." and (2) "Classified information or material disclosing a system, plan, installation, project or specific foreign relations matter the continuing protection of which is essential to national security."

The first three pages of Document 33, designated as pages A, B, and C, bear the overall classification of "Confidential" as their disclosure could assertedly reveal an intelligence source or method. The classified data in those three pages is circumscribed to two sets of brackets in page B, which encompass a very small portion of the page itself. The remaining 14 pages of the report were also classified under the same category, also because disclosure could allegedly reveal a "specific foreign relations matter", as contemplated in the above-quoted category of the Executive Order. The classified data in these pages is confined to certain deleted information in paragraph one, page one, paragraph one, page two and paragraph four, page seven.

■ Plaintiff insists on disclosure of the aforesaid items alleging that the document was not classified until almost two years after he requested his records from the F.B.I. The record reveals that classification was indeed made *a posteriori*. However, we do not believe that said factor *per se* compels us to disregard the classification made.

■ When exemption (b)(1) of the FOIA is applied to a given document, the burden is on the agency to demonstrate that the documents were properly classified pursuant to executive order. *Schaffer v. Kissinger*, 164 U.S.App.D.C. 282, 505 F.2d 389 (1974). However, the legislative history of the 1974 amendments makes it clear that, in evaluating (b)(1) claims *de novo* "substantial weight" is to be accorded to detailed agency affidavits setting forth the basis for the exemption. [1974] *U.S.Code Cong. & Admin.News*, p. 6290. Therefore the agency satisfies its burden by demonstrating that the document in question was classified "confidential" and, if so, that the classification procedures were consistent with the applicable Executive Order. *Schaffer v. Kissinger*, supra.

■ The affidavit filed by Defendants sufficiently fulfills this twofold test. The size of the deletions does nothing to suggest any "unnecessary classification" or "over classification" of Document 33, in transgression of Section 4 of EO 11652. [See note under 50 U.S.C. § 401]. Furthermore, the document, on its face, shows its classification, the "indefinite" date of declassification, in accordance with Section 5(B) of EO 11652, the date of classification and the

---

18. Agent Strong serves in a supervisory capacity in the Review Unit, Document Classification and Review Section, Records Management Division at F.B.I. Headquarters in Washington, D.C.

code identity of the official authorizing the classification, all in accordance with Section 4(A) and (B) of EO 11652.

 The function of determining whether secrecy is required in the national interest is expressly assigned to the Executive and it is far outside our province "to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Weissman v. Central Intelligence Agency*, supra, 184 U.S.App.D.C. at 122, 565 F.2d at 697; *Alfred A. Knopf Inc. v. Colby*, 509 F.2d 1362, 1368–1369 (C.A. 4, 1975), cert. den. 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482. Considering that the procedures and criteria for classification have been adequately explained, and in light of the limited nature of our reviewing faculties in this connection, we are compelled to defer to the agency's judgment concerning the deletions made to Document 33 under subsection (b)(1) of the FOIA. Even though we might disagree with the wisdom of the decision should the entire document be brought to our attention, it is settled that courts have neither the experience nor the expertise to determine whether these kind of classifications are substantially correct. *Flower v. Federal Bureau of Investigation*, supra, at 571 (W.D.Tex.1978), citing *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

 Concerning Plaintiff's argument of untimeliness in Defendants' classification of Document 33, nothing in the Executive Order 11652 has been pointed out to us indicating that no information may be classified after it becomes the subject of an FOIA request. If, as the documents on file reveal,[19] the classification is consistent with the Executive Order and has been authorized by an official with classification authority, we cannot overrule an otherwise valid executive judgment on this ground, which is the only discernible objection of Plaintiff

herein to the invocation of this exemption. See, *The FOIA National Security Exemption and the New Executive Order*, 37 Federal Bar Journal, 1 (Fall, 1978).

In view of the foregoing, we conclude that the assertion of subsection (b)(1) of the FOIA in this case is proper and that the excisions made thereunder from Document 33 of Exhibit V must be upheld.

### SUMMARY

Documents 1, 2, 7, 8, 12, 14, 15, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 39, 40, 42, 43, 52 and 53 have been released to the Plaintiff *in toto*. Insofar as these documents are concerned, the instant case is moot.

Document 41, consisting of 37 pages is a "Motion to Dismiss or, Proceedings Pending Completion of Review" filed by Defendants in the instant case. Plaintiff has a copy of this document, and no harm whatsoever has been caused by its having been withheld.

The Defendants' Motion for Summary Judgment is granted insofar as it concerns the deletions made from the aforementioned documents under Exemptions (b)(7)(C), (b)(7)(D) and (b)(1) of the FOIA. There being no just reason for delay, the Clerk of the Court is instructed to enter Judgment dismissing the portions of the Complaint claiming that these statutory exemptions were illegally used.

### D. *PLAINTIFF'S REQUEST FOR AMENDMENT OF RECORDS*

The complaint in this case prays for "an order and judgment of this Court that Defendant amend the records relating to Plaintiff's son." Plaintiff also avers that there are false, untrue and baseless statements against him in the records of the F.B.I.; that the agency has failed to give him any fact or information in support of such statements, and that the F.B.I. maintains records of Plaintiff describing how he

---

**19.** In reading this conclusion we adhere to the view that "[a]n analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." *Vaughn v. Rosen*, supra, 157 U.S.App.D.C. at 346–47, 484 F.2d at 826–827.

exercises rights guaranteed by the First Amendment in alleged violation of 5 U.S.C. § 552a(e)(7).[20]

██ The FOIPA empowers individuals to request the amendment of records pertaining to them. 5 U.S.C. § 552a(d)(2). However, as in the FOIA, certain records have been exempted from said amendment provisions. Thus, Subsection (j)(2) of the Act provides, as is herein pertinent:

> "The head of any agency may promulgate rules . . . to exempt any system of records within the agency from any part of this section . . . if the system of records is:
>
> (1) . . .
>
> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws . . . and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders . . . ; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual . . . "

See also, 5 U.S.C. § 552a(k)(2).

Pursuant to the above-quoted provision, the head of the F.B.I. specifically exempted the Central Records System of the agency from the amendment provisions of the FOIPA 5 U.S.C. § 552a(d). (See, 28 C.F.R. 16.95). Congress was well aware that the peculiar interests of law enforcement demand that certain investigatory records should be immune from the avalanche of amendment requests which would arise were the amendment rights of the FOIPA

be of blanket applicability to those records. See, generally, Section 2(b)(5) of Pub.L. 93–579, [1974] *U.S.Code Cong. & Admin.News,* p. 6916. See also, Pub.L. 94–183, [1975] *U.S.Code Cong. & Admin.News,* p. 2141. Therefore, the regulations exempting the system of records involved in this case have already been fully validated and applied by this Court. *Varona Pacheco v. Federal Bureau of Investigation,* supra, at 1034–1035.

██ Plaintiff makes no attempt to dispute the ban imposed by 28 C.F.R. 16.96 in relation to the records in question here. Instead, Plaintiff argues that the Defendant agency, by considering his request for amendment of records pertaining to him and his son, waived the exemption from the correction and amendment provisions of the FOIPA. Plaintiff bases this contention on a letter forwarded to him by the Director of the F.B.I. wherein it is stated that "it is the policy of [the] Bureau to consider each . . request [for amendment] on an individual basis in order to reach an equitable determination consistent with the best interests of both the individual and the Government." (Defendants' Exhibit U).

██ We simply ·cannot see how the Director's statement could amount to a waiver of the FOIPA exemptions. Cf. *Cooper v. Department of Navy,* 558 F.2d 274 (C.A. 5, 1977); *Kanter v. International Revenue Service,* 433 F.Supp. 812 (D.C.Ill., 1977). As stated before, the act is "neutral", in the sense that it does not prohibit the disclosure of exempt information. *Charles River Park "A" Inc. v. Department of Housing and Urban Development,* supra. Hence, any attempts to obviate a particular statutory exemption can only be indicative of good faith

---

**20.** The complaint further avers that the F.B.I., after refusing to amend Plaintiff's and his son's records, failed to inform him of the internal review procedures, and did not inform him of the provisions for judicial review in asserted contravention of 5 U.S.C. § 552a(d)(2)(A), (d)(3) and (d)(2)(B)(ii). [Paragraphs XVIII, XIX, XX and XXX of the Second Amended Complaint]. Since we hold that the agency's refusal to amend the record is properly before this Court for decision, we fail to see how Plaintiff is being prejudiced in these proceed-

ings by any such past nonfeasance. Accordingly, we conclude that this part of the complaint fails to state an actionable claim for relief and, there being no just reason for delay the same is therefore dismissed. See, *Lybarger v. Cardwell,* 577 F.2d 764, 767 (C.A. 1, 1978); *Marks v. Central Intelligence Agency,* supra, at 710, n. 3 (D.C.D.C., 1976); see also, *Mead Data Central, Inc. v. U. S. Dept. of Air Force,* supra, 184 U.S.App.D.C. 359, 566 F.2d 251. Judgment shall be entered accordingly.

and ought not to be characterized as a waiver, specially in the absence of disclosure to third parties. Cf. *State of N. D. ex rel. Olson v. Andrus*, 581 F.2d 177 (C.A. 8, 1975); *Mead Data Central, Inc. v. U. S. Dept. of Air Force*, supra, 184 U.S.App.D.C. 361, 566 F.2d at 253.[21]

Considering the above, we conclude that there is no genuine issue as to any material fact with regard to the F.B.I.'s refusal to amend and that Summary Judgment must be entered for Defendants as a matter of law. The portions of the complaint which seek the amendment of records at the F.B.I.'s Central Record System must be and are hereby dismissed. There being no just reason for delay, the Clerk of the Court shall enter partial Judgment accordingly.

### III. *PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.*

On April 17, 1979 the Plaintiff moved for partial Summary Judgment alleging the absence of a genuine issue as to any material fact regarding the withholding by Defendants of certain documents. We will only address ourselves to the items which have not been considered elsewhere in the present opinion.

### A. *The Alleged Absence of Itemization and Disclosure.*

On March 19, 1976 111 pages of documents were released to Plaintiff. Thereafter, on February 15, 1978, 84 additional pages were released, for a total 195 pages. In his answers to Plaintiff's Interrogatories 9 and 12, Special Agent Loome stated, in response to an inquiry as to the total number of pages of documents in the F.B.I. files falling within the scope of this suit, that there existed 123 pages on Plaintiff and 182

on his son, for a total of 305 pages. Plaintiff argues that, since only 195 pages have been released, there are at least 110 pages which have been completely withheld without any itemization or claim of exemption.

A review of the itemization contained in Exhibit V discloses that Agent Loome's Answer to Interrogatory 9 precisely corresponds to the number of existing documents on Plaintiff, as evinced by said Exhibit V. The main case file in which Plaintiff is the subject of interest (file number 105–140591) contains 93 pages and 11 documents. The main case file wherein Plaintiff is the complainant (file number 139–1619), contains 14 pages and 5 documents. Additionally, information concerning Plaintiff appears in 16 pages of files wherein he is not the subject of interest, which have been described as "see" references. Exhibit V demonstrates that, as to the aforesaid three categories, 123 pages have been itemized, which is the precise number stated by the F.B.I. affiant. Plaintiff's argumentation does not take into account the fact that 32 of those pages have been withheld pursuant to the claimed exemptions. The propriety of applying the exemptions to those pages is the precise object of our present endeavor and *a fortiori*, Plaintiff's insistence on total disclosure on this ground is unwarranted by the record. Disclosure would be appropriate only as to those documents improperly exempted.

The status of the records related to Plaintiff's son is not that clear. The answer to Interrogatory 11 states that the main case file relating to Olaguibeet A. López Vera (file number 44–19270) contains a total of 39 documents, "9 of which relate to Plaintiff's FOIPA request and this litigation", and the rest belonging to the F.B.I.'s Civil

---

**21.** 5 U.S.C. § 552a(e)(7) prohibits agencies to maintain any record "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or . . . *unless pertinent to and within the scope of an authorized law enforcement activity.*" (Emphasis added). We believe that the affidavits filed in this case allege facts establishing a colorable claim of a law enforcement purpose in the F.B.I. investigations conducted. (See pp. 10–12 of the Loome's affida-

vit). See *Irons v. Bells*, supra, 596 F.2d 468 (C.A. 1, 1979). We thus reach a conclusion at variance with Judge Skinner's concerning the sufficiency of the sworn statement. *Ibid.* Furthermore, we hold that all investigative files of the F.B.I. fall under the exception contained in 5 U.S.C. § 552a(e)(7). *Id.*, at pp. 474–476. Therefore, Paragraph XVI of the Second Amended Complaint is hereby dismissed. There being no just reason for delay, Judgment shall be entered accordingly.

Rights investigation relating to the death of Plaintiff's son. According to the answer to Interrogatory 12, the total number of pages on the subject of Plaintiff's son is 134 pages relating to the F.B.I.'s investigation, plus 48 pages regarding Plaintiff's FOIPA request and this litigation.

Although Defendants have not specifically opposed this part of Plaintiff's Motion, we note at the outset, that the latter 48 pages are entirely in the hands of Plaintiff. They consist of letters exchanged while the administrative proceedings in this case were taking place, and are part of the file in this case. (Defendants' Exhibits A through U). However, as to the remaining pages, there exists, *prima facie*, a discrepancy between the answers to interrogatories and the index in Exhibit V. There are *32* documents under file number 44–19270 in said Exhibit, all relating to the F.B.I. investigation, comprising 157 pages.[22] Clearly, this discrepancy, if at all, is beneficial to Plaintiff insofar as there are more itemized documents and pages than what is stated in answers 11 and 12. Nevertheless, in order to clarify the doubts which have been cast by this conflict, the Defendants are hereby ORDERED to file an explanation of the inconsistency, within thirty (30) days from the date of this Order.

B. *Plaintiff's Photograph, Security Index or Adex Cards.*

Page C of Document 34 (Exhibit V) indicates, at paragraph 4, that a suitable photograph of Plaintiff, taken in 1962, is available. In the complaint, Plaintiff demands that the negative, and all copies of said photograph be surrendered by the agency.

■ The affidavits and exhibits submitted by Defendants do not explain the reasons for non-disclosure of Plaintiff's photograph. It is in their *Memorandum* in support of the Motion for Summary Judgment that Defendants assert that the contents of each file do not include the alleged photograph and that the agency "undertook a further search for the photograph to no avail." The same is expressed in regard to the Security Index or Adex Card which is also mentioned in page C of Document 34. These unsworn assertions by a U. S. Attorney who did not participate in the search and itemization conducted *a quo*, cannot controvert the indicia in the record of existence of the photograph and card. Since no evidentiary weight can be attributed to the bare arguments of counsel, and in view of the fact that we have no jurisdiction to deny disclosure on any grounds apart from the specific statutory exceptions (*Tax Analysts and Advocates v. Internal Revenue Service*, 164 U.S.App.D.C. 243, 248, 505 F.2d 350, 355 (C.A.D.C.1974), Defendants are hereby ORDERED to file, within *thirty (30) days*, a sufficient affidavit regarding the availability *vel non* of Plaintiff's photograph[23] and/or Reserve Index Card.

In the event the card is actually extant, the Defendants shall produce the same to Plaintiff, unless sufficient cause is demonstrated to us justifying nondisclosure, within the same period of *thirty (30) days*.

22. Of these, 39 have been withheld pursuant to asserted claims for exemption, something which has been totally obviated by Plaintiff in his Motion.

23. We should point out, however, that Plaintiff is in effect requesting an expunction of the photograph from the record, something which would seem to fall within the exception discussed in Part II(D) of the present opinion. Moreover, apart from the hurdles presented with the all-or-nothing choice presented by Plaintiff, there are indications to the effect that disclosure of a photograph falls outside of the ambit of the FOIA. The statute deals with "records", which has been understood as that which is written or transcribed to perpetuate knowledge or events. *Nichols v. United States,* 325 F.Supp. 130 (D.C.Kan., 1971), aff'd. 460 F.2d 671 (C.A. 10, 1972), cert. denied 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232. On this basis, it has been intimated that neither the FOIA nor the FOIPA entitle Plaintiff to obtain the photograph requested. *DiViaio v. Kelley,* 571 F.2d 538, 542–543 (C.A. 10, 1978). We need not decide this conclusively, however, in light of our holding above, and in view of the fact that we cannot anticipate Defendants' response. See, *Charles River Park "A" Inc. v. HUD,* supra.

### C. Documents Originating With Other Federal Agencies.

Three pages of Document 16, Exhibit V, were not released to Plaintiff on the ground that they comprise a document originating with the Post Office Department. Document 45 of the same exhibit, comprising five pages, was also withheld in its entirety by Defendants alleging that it was prepared by the Department of the Army. Finally, the 3 pages of Document 49 were not disclosed under the assertion that it originated with the United States Air Force.

 In order to fulfill their duties under the statute, Defendants need demonstrate that each document in existence which has been requested either has been produced, is unidentifiable or is exempt under the Act. *National Cable Television Association, Inc. v. F. C. C.*, 156 U.S.App.D.C. 91, 94, 479 F.2d 183, 186 (1973). Hence, only information which clearly falls within the exemptions listed in the Act may be withheld by a federal agency. *General Dynamics Corp. v. Marshall*, 575 F.2d 1211 (C.A. 8, 1978).

 Nowhere does the statute exempt documents from disclosure by the sole reason that they have originated with an agency other than the F.B.I., and the latter cannot withhold any such document for referral to the originator for direct response to a FOIA complainant. *Flower v. F. B. I.*, supra, at 572. If the record is contained in the files of the F.B.I., it must be released, absent a valid exemption. *Ibid.*

Considering the above, we are without jurisdiction to affirm the agency's refusal to disclose the aforesaid documents. *Analysts and Advocates v. Tax International Revenue Service*, supra, 164 U.S.App.D.C. at 248, 505 F.2d at 355. Wherefore, Defendants are granted a period of thirty (30) days in which to show cause why production of these records should not be ordered.

### D. COINTELPRO Documents.

 Plaintiff requests that all documents originating with the F.B.I.'s Counter Intelligence Program relating to groups and individuals seeking independence for Puerto Rico be disclosed to him by Defendants. We cannot accede to this prayer.

Subsection (a)(3) of the FOIA, 5 U.S.C. § 552(a)(3) requires that federal agencies make records available only upon a request which "reasonably describes" the same. This is of course consistent with the policy of having the concerned agencies handle all demands at the first instance. See, *Shermco Industries v. Sec. of U. S. Air Force*, 452 F.Supp. 306, 316–317 (N.D.Tex.1978).

A review of the requests submitted by Plaintiff at the administrative level clearly indicates that Plaintiff's demand for records was circumscribed to documents pertaining to him and his son. (See Defendants Exhibits A, C, J, and Oo). The documents now vehemently prayed for by Plaintiff regarding COINTELPRO were never involved in the proceedings before the agency. This is fatal to Plaintiff's prayer.

To permit Plaintiff to press the instant demand in this action would open the door to *ad infinitum* litigation and would obviate the applicable requirements of exhaustion of administrative remedies. Such a belated request for documents entirely falls outside of the scope of this action and must be pursued in a separate litigation. See, *Shermco Industries, Inc. v. Secretary of U. S. Air Force*, supra. *F. T. C. v. Stanley H. Kaplan*, 433 F.Supp. 989 (D.C.Mass.1977); *Satra Belarus, Inc. v. NLRB*, 409 F.Supp. 271 (D.C.Wis.1976). Accordingly, Plaintiff's Motion for partial summary judgment as to this item is totally devoid of merit. The request is DENIED as improperly brought.

### E. The Remaining Items.

In clause 2 of his Motion for Partial Summary Judgment, the Plaintiff states that Defendants have failed to claim any exemption with regard to three items related to Plaintiff's son which, as per Exhibit 2, filed in support of Plaintiff's Motion, originated with the F.B.I. The same is also alleged in Clause 10 of the Motion in relation to certain documents in Seattle, Washington, Field Office Number 9–954, which are mentioned in a letter written on June 20, 1975

by the Assistant Director of Plans, Programs and Resources. (Defendants' Exhibit Aa) [24]

Although these may well be documents already described, we have no way of adequately ascertaining whether the documents have been included in the itemization submitted by Defendants. In view of this doubt, and considering Defendants' duty to establish through affidavits that no undisclosed documents are contained in their files in the absence of a valid exemption [*Marks v. U. S. Dept. of Justice*, 578 F.2d 261 (C.A. 9, 1978)], we hereby order the Defendants to show cause, within thirty (30) days, why production of the documents in question should not be ordered.

CONCLUSION

Except to the extent already seen, the Defendants in this case have substantially complied with their obligations under the FOIA and the FOIPA. We note, however, that said compliance has been forced, in no small part, by Plaintiff's arduous, energetic and estimable efforts throughout all the proceedings. We can only hope that both sides of this litigation display a conscientious and reasonable attitude with regard to the outstanding aspects of this suit, in furtherance of the commendable principles of the statutes and in order to expeditiously achieve a satisfactory accommodation of the legitimate contraposing interests.

IT IS SO ORDERED.

**24.** Clause 11 of Plaintiff's Motion, dealing with a reference to Plaintiff's participation in an activity prior to the date when Defendants state that compilation of records on Plaintiff was commenced, fails to raise any genuine issue of material fact when viewed against the Sworn Statement of Agent Loome to the effect that "[t]he first record contained in the investigatory file *wherein Plaintiff is the subject of interest* . . . is a report dated April 28, 1965." (Answer to Interrogatory 2). A reference to a past activity of Plaintiff in page 6 of Document 33, Exhibit V, falls short of pointing towards the existence of older documents *on Plaintiff*, and does not genuinely place in issue the Sworn Statement of Agent Loome. See, *Hahn v. Sargent*, 523 F.2d 461 (C.A. 1, 1975), cert. denied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).